1   LANCE A. ETCHEVERRY (SBN 199916)
    lance.etcheverry@skadden.com
2   JOHN M. NEUKOM (SBN 275887)
    john.neukom@skadden.com
3   CHRISTOPHER B. MCKINLEY (SBN 306087)
    christopher.mckinley@skadden.com
4   MICHELLE KAO (SBN 322758)
    michelle.kao@skadden.com
5   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    525 University Avenue, Suite 1400
6   Palo Alto, California 94301
    Telephone:     (650) 470-4500
7   Facsimile:     (650) 470-4570

8   ABRAHAM A. TABAIE (SBN 260727)
    abraham.tabaie@skadden.com
9   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
    300 South Grand Avenue, Suite 3400
10  Los Angeles, California 90071
    Telephone:     (213) 687-5000
11  Facsimile:     (213) 687-5600

12  Attorneys for Defendants,
    ENEL X NORTH AMERICA and
13  ELECTRIC MOTOR WERKS, INC.

14              **UNITED STATES DISTRICT COURT**

15              **NORTHERN DISTRICT OF CALIFORNIA**

16              **SAN FRANCISCO DIVISION**

17  GEORGE BETAK, an individual,              CASE NO.: 3:19-cv-02516-JSC

18                          Plaintiff,        **(A) ELECTRIC MOTOR WERKS, INC. AND
                                              ENEL X NORTH AMERICA'S NOTICE OF
19              v.                            MOTION AND MOTION TO DISMISS
                                              PLAINTIFF'S COMPLAINT;
20  VALERY MIFTAKHOV, an individual;          MEMORANDUM OF POINTS AND
    ELECTRIC MOTOR WERKS, INC., a             AUTHORITIES IN SUPPORT THEREOF;**
21  Delaware corporation; and ENEL X NORTH
    AMERICA, a Delaware corporation,          **(B) REQUEST FOR JUDICIAL NOTICE;**
22
                            Defendants.       **(C) DECLARATION OF CHRISTOPHER B.
23                                            MCKINLEY IN SUPPORT; and**

24                                            **(D) [PROPOSED] ORDERS GRANTING (a)
                                              MOTION TO DISMISS AND (b) REQUEST
25                                            FOR JUDICIAL NOTICE.**

26                                            Date:   September 5, 2019
                                              Time:   9:00 a.m.
27                                            Judge:  Hon. Jacqueline Scott Corley

28                                            Complaint Filed: May 9, 2019

---

**ELECTRIC MOTOR WERKS, INC. AND ENEL X NORTH AMERICA'S**          **CASE NO.: 3:19-cv-02516-JSC**
**MOTION TO DISMISS AND MPA IN SUPPORT**

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ............................................................................................. iii

NOTICE OF MOTION ..................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 2

I.      INTRODUCTION AND STATEMENT OF ISSUES ............................... 2

II.     BETAK'S PLEADING ALLEGATIONS .............................................. 3

III.    LEGAL STANDARDS .......................................................................... 5

IV.    ARGUMENT ......................................................................................... 6

        A.     The Complaint Fails to State a Plausible Claim for Corrected Inventorship Because Betak's Alleged Contributions to Conception, Even If Accepted as True, Were Not Claimed and Are Insignificant ........... 6

             1.     Betak Is Not a Joint Inventor Because His Alleged Contributions to Conception Are Not Claimed ................................. 8

                   (a)     The '941 patent does not claim Betak's alleged contributions. ........................................................ 8

                   (b)     The '277 patent does not claim Betak's alleged contributions. ...................................................... 10

             2.     Because Betak's Alleged Contributions Merely Explained the Current State of the Art, They Were Insignificant ........................... 13

        B.     Betak's Fraud by False Promise Claim Fails to Satisfy Rule 9(b)'s Heightened Pleading Standard and Should be Barred by the Economic Loss Rule ...................................................................... 15

             1.     Betak's Fraud by False Promise Claim Fails to Satisfy Rule 9(b) ................................................................................ 16

             2.     The Economic Loss Rule Should Bar Betak's Fraud by False Promise Claim ...................................................................... 18

        C.     Betak's Quasi-Contract and Quantum Meruit Claims Fail Because They Are Time-Barred and the Complaint Fails to Plead Facts Specific to EMW ................................................................................ 20

        D.     The Complaint Fails to Plead Facts Supporting Betak's Claim Under California's Unfair Competition Law ("UCL") ........................................... 21

             1.     The UCL Claim Under the Unlawful Prong Is Preempted or Derivative of Common Law Claims That Cannot Satisfy the Unlawful Prong ............................................................................ 22

**ELECTRIC MOTOR WERKS, INC. AND ENEL X NORTH AMERICA'S**     **CASE NO.: 3:19-cv-02516-JSC**
**MOTION TO DISMISS AND MPA IN SUPPORT**

2.  The Complaint Fails to Plead Facts Supporting a UCL Claim Under the Unfair Prong.................................................. 22

3.  The Complaint Fails to Plead Facts Supporting a UCL Claim Under the Fraudulent Prong Sufficient to Meet the Heightened Rule 9(b) Standard......................................... 23

E.  Betak's Constructive Trust Claim Is an Equitable Remedy, Not a Claim................................................................................................ 24

F.  The Complaint Fails to Plead Facts Supporting an Accounting Claim ........ 24

V.  CONCLUSION........................................................................................................ 25

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Anderson v. Kimberly-Clark Corp.*,
570 F. App'x 927 (Fed. Cir. 2014) ................................................................. 8, 13

*Arena Restaurant & Lounge LLC v. Southern Glazer's Wine & Spirits, LLC*,
Case No. 17-CV-03805, 2018 WL 1805516 (N.D. Cal. Apr. 16, 2018) ........................ 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................... 5

*Beco Dairy Automation, Inc. v. Global Tech Systems, Inc.*,
No. 1:12-cv-01310 LJO, SMS, 2015 WL 925588 (E.D. Cal. Mar. 3, 2015) ............... 6, 7, 12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................... 6

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*,
20 Cal. 4th 163 (1999) ................................................................................... 22

*Cheery Way (USA), Inc. v. Ngoc Diep Duong*,
No. C12-0486 JSC, 2012 WL 1670172 (N.D. Cal. May 14, 2012) ............................ 16

*Coffelt v. NVIDIA Corp.*,
Case No. CV 16-00457 SJO (KKx), 2016 WL 7507763 (C.D. Cal. June 21, 2016),
*aff'd*, 680 F. App'x 1010 (Fed. Cir. 2017) .......................................................... 13

*Creative Mobile Technologies, LLC v. Flywheel Software, Inc.*,
Case No. 16-cv-02560-SI, 2017 WL 679496 (N.D. Cal. Feb. 21, 2017) ...................... 23

*Eastman v. Apple Inc.*,
No. 18-cv-05929-JST, 2018 WL 5982440 (N.D. Cal. Nov. 14, 2018) ................... 7, 12, 15

*Ecojet, Inc. v. Pure Spa Components, Inc.*,
Case No.: SACV 16-01463-CJC(KESx), 2017 WL 3485780 (C.D. Cal. Feb. 10,
2017) ........................................................................................................... 6

*Eli Lilly & Co. v. Aradigm Corp.*,
376 F.3d 1352 (Fed. Cir. 2004) ......................................................................... 6

*Elias v. Hewlett-Packard Co.*,
903 F. Supp. 2d 843 (N.D. Cal. 2012) ................................................................. 23

*Ethicon, Inc. v. U.S. Surgical Corp.*,
135 F.3d 1456 (Fed. Cir. 1998) ..................................................................... 6, 13

*Flowers v. Wells Fargo Bank, N.A.*,
No. C 11-1315 PJH, 2011 WL 2748650 (N.D. Cal. July 13, 2011) .......................... 17

*Garrison v. Oracle Corp.*,
159 F. Supp. 3d 1044 (N.D. Cal. 2016) ............................................................... 17

iii

*Ginocchi v. Grand Home Holdings, Inc.*,
    Civil No. 10cv2115-L(BGS), 2011 WL 3474936 (S.D. Cal. Aug. 9, 2011) ...................... 25

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) ........................................................................................ 23

*James v. J2 Cloud Services Inc.*,
    Case No. 2:16-cv-05769-CAS(PJWx), 2018 WL 6092461 (C.D. Cal. Nov. 19, 2018) ....... 22

*Janis v. California State Lottery Commission*,
    68 Cal. App. 4th 824 (1998) ......................................................................................... 25

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ......................................................................................... 6

*Kennedy v. World Savings Bank, FSB*,
    Case No. 14-cv-05516-JSC, 2015 WL 1814634 (N.D. Cal. Apr. 21, 2015) ................. 16, 24

*Kim v. Westmoore Partners, Inc.*,
    201 Cal. App. 4th 267 (2011) ....................................................................................... 24

*Levitt v. Yelp! Inc.*,
    765 F.3d 1123 (9th Cir. 2014) ...................................................................................... 23

*Marder v. Lopez*,
    450 F.3d 445 (9th Cir. 2006) ..................................................................................... 8, 13

*Mattel, Inc. v. MGA Entertainment, Inc.*,
    616 F.3d 904 (9th Cir. 2010) ........................................................................................ 24

*McBride v. Boughton*,
    123 Cal. App. 4th 379 (2004) ....................................................................................... 20

*Minkler v. Apple, Inc.*,
    65 F. Supp. 3d 810 (N.D. Cal. 2014) ........................................................................... 23

*Multifamily Captive Group, LLC v. Assurance Risk Managers, Inc.*,
    629 F. Supp. 2d 1135 (E.D. Cal. 2009).................................................................... 18, 19

*Oracle USA, Inc. v. XL Global Services, Inc.*,
    No. C 09-00537 MHP, 2009 WL 2084154 (N.D. Cal. July 13, 2009) .................... 18, 19, 20

*Potter v. Chevron Products Co.*,
    Case No. 17-cv-06689-PJH, 2018 WL 4053448 (N.D. Cal. Aug. 24, 2018) ...................... 18

*Royal Primo Corp. v. Whitewater West Industries, Ltd.*,
    Case No. 15-cv-04391-JCS, 2016 WL 4080177 (N.D. Cal. July 29, 2016)........................ 20

*Senah, Inc. v. Xi'an Forstar S&T Co.*,
    Case No. 13-cv-04254-BLF, 2014 WL 6065895 (N.D. Cal. Nov. 12, 2014)...................... 17

*Sewall v. Walters*,
    21 F.3d 411 (Fed. Cir. 1994)..................................................................................... 6, 12

*Shkolnikov v. JPMorgan Chase Bank,*
    No. 12-03996 JCS, 2012 WL 6553988 (N.D. Cal. Dec. 14, 2012) .................................... 24

*Stearns v. Select Comfort Retail Corp.,*
    763 F. Supp. 2d 1128 (N.D. Cal. 2010) ............................................................................. 22

*Suarez v. Bank of America Corp.,*
    Case No. 18-CV-01202-MEJ, 2018 WL 2431473 (N.D. Cal. May 30, 2018) .................... 22

*Summit Estate, Inc. v. Cigna Healthcare of California, Inc.,*
    Case No. 17-CV-03871-LHK, 2017 WL 4517111 (N.D. Cal. Oct. 10, 2017) .................... 21

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007) .................................................................................. 6, 16, 17

*UCAR Technology (USA) Inc. v. Yan Li,*
    Case No. 5:17-cv-01704-EJD, 2018 WL 2555429 (N.D. Cal. June 4, 2018)..................... 23

*UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.,*
    117 F. Supp. 3d 1092 (C.D. Cal. 2015) ............................................................................. 18

*United States ex rel. Bergelectric Corp. v. Sauer, Inc.,*
    Case No. 5:18-cv-00612-EJD, 2019 WL 1746061 (N.D. Cal. Apr. 18, 2019)................... 20

*Valencia v. Sharp Electronics Corp.,*
    No. C 11-06177 JW, 2012 WL 542711 (N.D. Cal. Feb. 21, 2012),
    *aff'd,* 561 F. App'x 59 (9th Cir. 2014)............................................................................. 15

## STATUTES

35 U.S.C. § 256(a) ........................................................................................................... 6

Cal. Bus. & Prof. Code § 17200 ..................................................................................... 21

Cal. Civ. Proc. Code § 338(d) ......................................................................................... 20

Cal. Civ. Proc. Code § 339 ............................................................................................. 21

## RULES

Fed. R. Civ. P. 8(a)(2)....................................................................................................... 5

Fed. R. Civ. P. 9(b) ........................................................................................................... 6

**ELECTRIC MOTOR WERKS, INC. AND ENEL X NORTH AMERICA'S**          **CASE NO.: 3:19-cv-02516-JSC**
**MOTION TO DISMISS AND MPA IN SUPPORT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on September 5, 2019, at 9:00 a.m. or as soon thereafter as the matter may be heard by the United States District Court for the Northern District of California, located at the San Francisco Courthouse, Courtroom F – 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Jacqueline Scott Corley, Defendants Electric Motor Werks, Inc. ("EMW") and Enel X North America ("Enel X") (collectively, the "Corporate Defendants") will, and hereby do, move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Civil Local Rule 7-2, for an order dismissing Counts I, II, and VI-VIII of Plaintiff George Betak's Complaint against the Corporate Defendants; and Counts III-V against EMW. This motion is based on the Memorandum of Points and Authorities below, the Corporate Defendants' Request for Judicial Notice, and the Declaration of Christopher B. McKinley in support thereof.

**RELIEF REQUESTED**

The Corporate Defendants respectfully request that the Court enter an order dismissing: (1) Counts I, II, and VI-VIII against the Corporate Defendants; and (2) Counts III-V against EMW.

Date: July 3, 2019             SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                              By: */s/   John M. Neukom*
                              JOHN M. NEUKOM

                              Attorneys for Defendants,
                              ENEL X NORTH AMERICA and
                              ELECTRIC MOTOR WERKS, INC.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION AND STATEMENT OF ISSUES

Plaintiff George Betak's ("Betak") Complaint asserts several legal theories in an attempt to hold the Corporate Defendants liable for Betak's seemingly troubled relationship with Defendant Valery Miftakhov ("Miftakhov"), but fails to state a viable claim. This failure is based principally on the Complaint's (1) targeting of Miftakhov as the alleged bad actor, with few, if any, references to the Corporate Defendants; and (2) failure to allege facts supporting given claims.

Betak's corrected patent inventorship claims (Counts I and II) must allege sufficient facts to allow the Court to reasonably infer—at the pleading stage—that Betak made a significant contribution to the conception of claims 1 and 11 of the U.S. Patent No. 9,987,941 ("the '941 patent"), and claims 1 and 12 of U.S. Patent No. 10,025,277 ("the '277 patent").[1] But even if Betak's alleged contributions were accepted as true, he still fails to state a plausible claim for relief because the alleged contributions are not even recited in the claims at issue. *Viz.*, Betak is alleging that he contributed certain ideas to patent claims, and yet the patent claims he identifies do not reflect the allegedly contributed ideas. Furthermore, Betak's allegedly contributed ideas do nothing more than describe the then-current state of the art as reflected by the prior art references listed on the face of the patents at issue. Counts I and II therefore should be dismissed.

Betak's fraud by false promise claim (Count III) should be dismissed because the Complaint fails to adequately allege that EMW participated in Miftakhov's alleged wrongdoing under Federal Rule of Civil Procedure ("Rule") 9(b)'s heightened pleading standard. Indeed, Betak admits he never signed an employment agreement with EMW, and that the employment offer he received to work at a different company than EMW originated from Miftakhov. Betak has not alleged facts that could support an allegation that Miftakhov acted as the agent, or in his capacity as an agent, of EMW while making this offer. Instead of alleging that EMW engaged in any specific misconduct, the Complaint merely makes broad allegations against Miftakhov and EMW collectively, while simultaneously contradicting those same general allegations in more specific

---

[1]   Hereinafter, the cited claims are collectively referred to as "the claims at issue," and the '941 patent and the '277 patent are collectively referred to as "the patents at issue."

1   allegations that Miftakhov acted outside of his scope as EMW's CEO. (Compl. ¶ 31.) Moreover,

2   because Betak is asserting a tort remedy where only economic harm has been alleged, his fraud by

3   false promise claim is independently barred by the economic loss rule.

4       Betak's quasi-contract and quantum meruit claims (Count IV and V) are duplicative and

5   should be consolidated into a single claim in the first instance. Following consolidation, the

6   remaining claim should be dismissed because it is time-barred by the statute of limitations (based

7   on Betak's own fact allegations), and furthermore because the Complaint fails to properly allege

8   facts suggesting that EMW requested any services from Betak.

9       The Court should also dismiss Betak's unfair competition claim (Count VI) under the

10  unlawful, unfair, and fraudulent prongs. Under the unlawful prong, to the extent Betak relies on his

11  corrected inventorship claim, it is preempted, and Betak cannot rely on his other common law

12  claims to satisfy the unlawful prong. Under the unfair prong, the Complaint fails to properly allege

13  facts asserting that the Corporate Defendants violated any antitrust law, or the public policies

14  undergirding such laws. And under the fraudulent prong, the Complaint fails to plead with

15  particularity that the Corporate Defendants participated in Miftakhov's alleged misconduct.

16      Betak's constructive trust claim (Count VII) should be dismissed because a request for a

17  constructive trust is an equitable remedy, not a claim.

18      Betak's accounting claim (Count VIII) should be dismissed because the Complaint fails to

19  properly allege facts asserting that either (1) a fiduciary relationship exists; or (2) the accounts in

20  question are so complicated they are unascertainable without an accounting.

21      Accordingly, the Corporate Defendants ask the Court to dismiss all claims against them.

22  **II.    BETAK'S PLEADING ALLEGATIONS**

23      The Complaint alleges a failed business and personal relationship between two individuals:

24  Miftakhov and Betak. The relationship allegedly soured after Miftakhov applied for, received, and

25  assigned certain patent rights to a corporate entity, EMW, relating to electric vehicle ("EV")

26  charging station systems—without naming Betak as a co-inventor of some patents. (Compl. ¶¶ 54-

27  55, 69-72.) The Complaint refers specifically to three of Betak's alleged ideas that he purports

28  contributed to the conception of the patent claims at issue: (1) having Wi-Fi-connected, software-

**ELECTRIC MOTOR WERKS, INC. AND ENEL X NORTH AMERICA'S**          **CASE NO.: 3:19-cv-02516-JSC**
**MOTION TO DISMISS AND MPA IN SUPPORT**

based charging stations for EVs that optimize energy usage in response to costs and available incentives (*id.* ¶¶ 24, 45); (2) using revenue-grade electric meters to measure charging-station usage (*id.* ¶ 46); and (3) allowing user-selected charging preferences to control energy distribution (*id.* ¶ 47).

The Complaint also alleges generally that "many if not all of the other significant inventions associated with the JuiceBox/JuiceNet project" resulted from meetings that Betak participated in, but does not specify what those inventions were or how Betak contributed to their conception. (*Id.* ¶ 49.) The Complaint also posits that these alleged contributions by Betak are in "claims 1 and 11 of the '941 Patent" and in "claims 1 and 12 of the '277 Patent." (*See id.* ¶¶ 81, 87.) The Complaint does not identify where in these claims such contributions are found. (*Id.*)

Betak's remaining state law claims rely, in some part, on allegations that "Defendant Miftakhov approached Plaintiff Betak about collaborating on the next generation of the JuiceBox product, which would include the connectivity features that Betak had proposed." (*Id.* ¶ 28.) Notably, the Complaint alleges that "Miftakhov proposed to [Betak] that their collaboration would be under the auspices of a new company called EV Juice, Inc. ("EV Juice"), rather than through EMW." (*Id.* ¶ 31.) According to Betak, this was to avoid being "burdened by what Miftakhov described as 'baggage' related to [EMW's] other founders and shareholders." (*Id.*) The Complaint alleges Miftakhov presented Betak with an "Employment Offer Letter" and "Intellectual Property and Confidentiality Agreement" for EV Juice—not EMW—in September of 2014. (*Id.* ¶ 32.)

In his fraud by false promise claim, Betak alleges that "Defendants Miftakhov and EMW engaged in a fraudulent scheme to induce Plaintiff Betak to contribute to the JuiceBox/JuiceNet project without pay . . . ." (*Id.* ¶ 92.) The Complaint generally states that in making the alleged misrepresentations, Miftakhov acted "as the CEO of Defendant EMW," but provides no supporting allegations. (*Id.* ¶ 93.) The Complaint does not attribute any further statements to EMW.

In his quasi-contract claim, Betak alleges that "Miftakhov offered that if [Betak] contributed his intellectual energy, technical expertise, and business contacts to the effort to build the JuiceBox/Juice Net product, Betak would share in the proceeds from the commercialized product, including in any sale of the business." (*Id.* ¶ 102.) Similarly, in his quantum meruit claim,

**ELECTRIC MOTOR WERKS, INC. AND ENEL X NORTH AMERICA'S**          **CASE NO.: 3:19-cv-02516-JSC**
**MOTION TO DISMISS AND MPA IN SUPPORT**

1   Betak alleges that "Miftakhov, who on information and belief is and at all relevant times was the

2   CEO of EMW, requested that [Betak] work on the JuiceBox/JuiceNet project." (*Id*. ¶ 105.) Again,

3   the Complaint does not attribute any further statements or representations to EMW.

4       The Complaint further alleges that "Miftakhov, EMW, and Enel X have engaged in

5   unlawful, unfair, and/or fraudulent business practices." (*Id*. ¶ 109.) These allegations rely on

6   "Miftakhov and EMW's failure to identify [Betak] as an inventor in filing and prosecuting various

7   patent applications;" "Miftakhov and EMW's false and fraudulent promises;" "Miftakhov's,

8   EMW's, and Enel X's knowing and intentional efforts to acquire and transfer to Enel X patents on

9   which [Betak] . . . should have been named as an inventor;" "Enel X's acquisition of patents that it

10  knew or should have known failed to name all proper inventors;" and "Miftakhov's, EMW's and

11  Enel X's failure to pay [Betak] anything for his work on the JuiceBox/JuiceNet project." (*Id*.

12  ¶ 109.) The Complaint does not allege an antitrust injury or a violation of established public policy.

13      For the constructive trust claim, the Complaint alleges that "Defendants would be unjustly

14  enriched, at [Betak's] expense, if they were permitted to retain, use, and control the intellectual

15  property, acquisition amounts, and other funds described above." (*Id*. ¶ 114.)

16      Finally, the Complaint alleges that "[t]he identity, amounts, and value of the transferred

17  assets and property [allegedly owed to Betak] are unknown to [Betak] and, on information and

18  belief, cannot be ascertained without an accounting." (*Id*. ¶ 117.) However, the Complaint does not

19  allege any fiduciary relationship between the parties. Further, the Complaint alleges that Betak's

20  compensation under his employment offer letter would be "an initial equity grant that 'corresponds

21  to 3% (three percent) of the Company's issued shares at the time of this offer'" (*id*. ¶ 33), and that

22  EMW was acquired for approximately $153,460,000 (*id*. ¶ 69).

23  **III.   LEGAL STANDARDS**

24      Pleadings must include a "short and plain statement of the claim showing that the pleader is

25  entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard does not require "detailed factual

26  allegations," but "demands more than an unadorned, the defendant-unlawfully-harmed-me

27  accusation" or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556

28  U.S. 662, 678 (2009) (internal quotation marks omitted). To survive a motion to dismiss under

5

1    Rule 12(b)(6), a complaint must allege "sufficient factual matter, accepted as true, to state a claim

2    to relief that is plausible on its face." *Id.* The Court need not accept as true "[t]hreadbare recitals of

3    the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at

4    678. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more

5    than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

6    do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).

7            Fraud claims are subject to heightened pleading standards under Rule 9(b), requiring them

8    to be pled with "particularity." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a plaintiff must plead the

9    "who, what, when, where, and how" of the allegedly fraudulent conduct. *Kearns v. Ford Motor*

10   *Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009) (internal quotation marks omitted); *see also Swartz v.*

11   *KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) ("[A] fraud [claim] against differently situated

12   defendants must identify the role of each defendant in the alleged fraudulent scheme." (alterations

13   and internal quotation marks omitted)).

14   **IV.    ARGUMENT**

15           **A.    The Complaint Fails to State a Plausible Claim for Corrected Inventorship
             Because Betak's Alleged Contributions to Conception, Even If Accepted as**
16           **True, Were Not Claimed and Are Insignificant**

17           While a court may order the Director of the USPTO to correct inventorship under 35 U.S.C.

18   § 256(a), the alleged co-inventor carries a heavy burden. "The inventors as named in an issued

19   patent are presumed to be correct," and thus the party alleging an error "must meet the heavy

20   burden of proving its case by clear and convincing evidence." *Eli Lilly & Co. v. Aradigm Corp.*,

21   376 F.3d 1352, 1358-59 (Fed. Cir. 2004). "[T]o survive a motion to dismiss, [an omitted inventor]

22   must allege facts that would allow the Court to draw a 'reasonable interference' that [he]

23   contributed to the conception of the claimed inventions." *Beco Dairy Automation, Inc. v. Glob.*

24   *Tech Sys., Inc.*, No. 1:12-cv-01310 LJO, SMS, 2015 WL 925588, at *5 (E.D. Cal. Mar. 3, 2015)

25   (quoting *Iqbal*, 556 U.S. at 678).

26           An inventor (or joint inventor) is a person who contributes to the conception of a claimed

27   invention. *Eli Lilly*, 376 F.3d at 1358-59. Conception, the "touchstone of inventorship," is the

28   "formation in the mind of the inventor, of a definite and permanent idea of the complete and

**ELECTRIC MOTOR WERKS, INC. AND ENEL X NORTH AMERICA'S**          **CASE NO.: 3:19-cv-02516-JSC**
**MOTION TO DISMISS AND MPA IN SUPPORT**

1   operative invention, as it is hereafter to be applied in practice." *Ethicon, Inc. v. U.S. Surgical*

2   *Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998) (internal quotation marks omitted). A joint inventor

3   must have contributed to the conception of at least one claim, meaning that, at minimum, the

4   alleged contribution must be claimed. *Sewall v. Walters*, 21 F.3d 411, 415 (Fed. Cir. 1994)

5   ("Determining 'inventorship' is nothing more than determining who conceived the subject matter

6   at issue, [and] whether that subject matter is recited in a claim." (citation omitted)). An omitted

7   inventor's contribution cannot be insignificant and must constitute more than explaining well

8   known concepts or the current state of art. *Ethicon*, 135 F.3d at 1460 ("One who simply provides

9   the inventor with well-known principles or explains the state of the art without ever having 'a firm

10   and definite idea' of the claimed combination as a whole does not qualify as a joint inventor.").

11       A court in this District recently dismissed corrected inventorship claims where—like

12   here—the claimed co-inventor's alleged contributions were not recited in the asserted claims and

13   were insignificant. *See Eastman v. Apple Inc.*, No. 18-cv-05929-JST, 2018 WL 5982440, at \*6

14   (N.D. Cal. Nov. 14, 2018). In *Eastman*, the claimed co-inventor's complaint alleged that he

15   contributed to the conception of patents covering Apple's find-my-iPhone and mobile-ticket-sale

16   features. *Id.* at \*5-6. But because the alleged contributions were not claimed in the language of the

17   disputed patent claims, and because the alleged contributions merely explained what was already in

18   the prior art, the court dismissed the corrected inventorship claims at the pleading stage. *Id.* The

19   court held it could not "reasonably infer that an alleged contribution that simply mirrors prior art

20   and is seemingly unrelated to the novel aspect of the invention provides a basis for a [corrected

21   inventorship] claim." *Id.* at \*6. Other courts have held similarly. *See Ecojet, Inc. v. Pure Spa*

22   *Components, Inc.*, Case No.: SACV 16-01463-CJC(KESx), 2017 WL 3485780, at \*5 (C.D. Cal.

23   Feb. 10, 2017) (dismissing corrected-inventorship claim when the complaint was "threadbare,"

24   failing to "identify what, if anything, [the putative inventor] actually contributed to the

25   [patented] designs, and [did] not allege that any of [his] contributions were actually claimed in the

26   resulting patent"); *Beco Dairy*, 2015 WL 925588, at \*5 (dismissing corrected inventorship counts

27   for failing to adequately plead contribution to conception where claims at issue recited a two-ring

28   milk meter but the omitted inventor's alleged contribution required three rings).

1.    <u>Betak Is Not a Joint Inventor Because His Alleged Contributions to Conception Are Not Claimed</u>

The claims at issue do not contain Betak's alleged contributions. The Complaint specifically identifies three of Betak's alleged ideas that purportedly contributed to the conception of the patent claims at issue: (1) having Wi-Fi-connected, software-based charging stations that optimize energy usage in response to costs and available incentives; (2) using revenue-grade electric meters to measure charging station usage; and (3) allowing user-selected charging preferences to control energy distribution. (Compl. ¶¶ 24, 45-47.) Betak alleges generally that these contributions are in the claims at issue. (*Id.* ¶¶ 81, 87.) Betak is wrong.

(a)    *The '941 patent does not claim Betak's alleged contributions.*

The Complaint incorrectly alleges that claims 1 and 11 "claim, for example, the 'connected' electric vehicle charging system and method that Betak first proposed . . . in May 2014 . . . [and] the use of an electricity meter at the charging station." (*Id.* ¶ 81.)[2] However, Claims 1 and 11 of the '941 patent do not recite Wi-Fi connected charging stations or revenue-grade electricity meters.

The '941 patent relates generally to EV charging stations and power grid management, and is directed to "systems and methods for local autonomous response to grid conditions by electric vehicle charging stations." (Ex. A[3] to Compl. at 1:18-22.) In one embodiment, an autonomous system has three meters (110, 120, 130) that each measure the flow of electricity through various lines in the system, and a controller (140) that receives input from those meters to control a

---

[2]  The Complaint (correctly) does not assert that claims 1 or 11 of the '941 patent are directed to user-selected preferences.

[3]  The patents at issue—the '941 patent and the '277 patent—were attached to the Complaint as Exhibits A and B, respectively. (Exs. A & B to Compl.) Accordingly, the Court should consider them when deciding this motion because they were attached to and referred to by the Complaint, are central to Betak's corrected inventorship claims, and cannot reasonably be the subject of disputed authenticity. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."). Alternatively, the Court should take judicial notice of these exhibits and consider them when deciding this motion because they are U.S. patents, which constitute public records the authenticity of which cannot reasonably be disputed. *See Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 932 n.3 (Fed. Cir. 2014) ("It is also well-established that a court may take judicial notice of patents or patent applications."); *see also* Corporate Defendants' contemporaneously filed Request for Judicial Notice.

1   charging station (150). (*Id.* at 6:21-7:2, Fig. 1.) The specification explains that the system provides,

2   among other things, load sharing benefits that allow charging stations to coordinate and optimize

3   charging loads on an electrical circuit. (*Id.* at 5:10-44.) Claim 1 of the '941 patent is

4   representative:[4]

5
6       1. A system for generating a local autonomous response to a condition of an electric grid by a plurality of electric vehicle charging stations, the system comprising:

7       a. a first electricity meter for reading current, frequency, or voltage from a first electricity supply line to one of the plurality of electric vehicle charging stations;

8
9       b. a second electricity meter for reading current, frequency, or voltage from a second electricity supply line to all of the plurality of electric vehicle charging stations;

10      c. a third electricity meter for reading current, frequency, or voltage from a third electricity line from one or more renewable generators; and

11
12      d. an electric vehicle charging controller operatively coupled to the first electricity meter, the second electricity meter, the third electricity meter and the plurality of electric vehicle charging stations and operable to obtain readings from the first electricity meter, the second electricity meter and the third electricity meter and to control at least one of the plurality of electric vehicle charging stations based on the obtained readings.

13

14

15
16  (*Id.* at 11:61-12:16.) As evidenced by the text of claim 1, Betak's alleged contributions to the '941

17  patent—Wi-Fi connectivity and revenue-grade meters—are not claimed. Claim 1 by its own terms

18  does not claim Wi-Fi connectivity or optimizing energy supply based on the price of electricity or

19  utility incentives. (*See id.*) In fact, the words "Wi-Fi," "connected," and "incentive" make no

20  appearance in **any** claim of the '941 patent, and nothing in that patent suggests that Wi-Fi is

21  essential to operation of the system in claim 1 (or the method of claim 11).

22      Moreover, although claim 1 recites first, second, and third electricity meters, it does not

23  recite or purport to use a "revenue-grade electric meter," which the Complaint specifically alleges

24  as Betak's contribution. (*See* Compl. ¶ 46.) Indeed, according to the specification, Elements 110,

25  120, and 130 in Figure 1, which embody the first, second, and third electricity meters, respectively,

26  need only be capable of reading electricity through lines connecting one of a charging station, the

---

4   Claim 11 of the '941 patent is directed to a method that, for the purpose of this motion, is materially similar to claim 1 (*see* Ex. A to Compl. at 13:4-26), such that the arguments herein raised as to claim 1 apply equally to claim 11.

27

28

**ELECTRIC MOTOR WERKS, INC. AND ENEL X NORTH AMERICA'S**     **CASE NO.: 3:19-cv-02516-JSC**
**MOTION TO DISMISS AND MPA IN SUPPORT**

1   entire site, or a generator. (Ex. A to Compl. at 6:21-37.) And there is no requirement that "revenue-

2   grade" electricity meters are needed to perform the meter reading functions described in claim 1.

3   Thus, claims 1 (and 11) of the '941 patent do not contain Betak's alleged contributions.

4             (b)   *The '277 patent does not claim Betak's alleged contributions.*

5         The Complaint does not (and cannot) allege that claims 1 or 12 of the '277 patent are

6   directed to revenue-grade meters.  Further, Claims 1 and 12 of the '277 patent do not recite Wi-Fi

7   connected charging stations or user-selected charging preferences. Paragraph 87 of the Complaint,

8   however, alleges incorrectly that:

> [c]laims 1 and 12 of the '277 Patent purport to claim, for example, a
> 'computerized system' and 'computer-implemented method' for load
> modeling to enable an electrical grid to deliver power efficiently to
> 'charging assets' for use in charging electric vehicle, for use with the
> 'connected' electric vehicle charging system and method that
> Plaintiff Betak first proposed . . . in May 2014.

13        Betak further alleges that claims 1 and 12's concepts of determining a "charging pattern for

14   each of the plurality of charging assets" and controlling "charging of the plurality of charging

15   assets in accordance with the determined charging patterns," include "the 'user preference'

16   approach for controlling the JuiceBox charging station that Plaintiff Betak proposed." (*Id.*) But,

17   here again, Betak is wrong as is apparent by reading the patent at issue.

18        The '277 patent is directed to "systems and methods for electrical charging load modeling

19   services to optimize power grid objectives." (Ex. B to Compl. at 1:31-36.) In one embodiment, a

20   computerized system includes a cloud-based server (109) that collects and analyzes data from

21   various sources (100-108) and generates outputs to control a power charger (108) while advancing

22   grid objectives (110). (*Id.* at 5:35-6:46, Fig. 1.) The specification explains that the objectives

23   include maximizing revenue, protecting assets, balancing energy distribution, reducing green-house

24   gas emissions, and delivering other related services. (*Id.* at 6:37-46.) In another embodiment, a

25   server (230) advances grid objectives (110) via logical modules (231-237) that, among other

26   things, determine the charging patterns of charging assets (*i.e.*, charging stations) and control them.

27   *Id.* at 7:1-30. Claim 1 of the '277 patent is representative:

28

**ELECTRIC MOTOR WERKS, INC. AND ENEL X NORTH AMERICA'S**          **CASE NO.: 3:19-cv-02516-JSC**
**MOTION TO DISMISS AND MPA IN SUPPORT**

1. A computerized system for electrical charging load modeling to optimize power grid objectives, the system comprising:
a. a plurality of charging assets; and
b. a cloud server comprising at least one processing unit, the cloud server comprising:
i. a data aggregation module configured to collect and aggregate a plurality of information items;
ii. an analytics module configured to identify at least one temporal model associated with the data collected and aggregated by the data aggregation module;
iii. a charging module configured to determine a charging pattern for each of the plurality of charging assets, the charging pattern comprising information on time intervals when each of the plurality of charging assets is to be charged, including the beginning and ending times of the charging operation and information on a level of charging during each charging time interval;
iv. a charger asset module configured to control charging of the plurality of charging assets in accordance with the determined charging patterns by issuing a control command to each of the plurality of charging assets; and
v. a communication module for communicating the control command issued by the charger asset module to the respective charging asset via a data network.

(*Id.* at 11:24-51.)[5] As evidenced by the text of claim 1, Betak's alleged contributions to the '277 patent—Wi-Fi connectivity and user-selected charging preferences—are not claimed. Indeed, claim 1 does not claim Wi-Fi connectivity or optimizing energy supply based on the price of electricity or energy provider incentives. (*See id.* (not reciting the words "Wi-Fi," "connected," or "incentives" at all).) Instead, the claimed system describes a server with modules for aggregating and analyzing data, a module for recognizing charging asset patterns, and a module for controlling charging stations accordingly. (*Id.*) Indeed, the '277 patent specification explains that Wi-Fi is not essential to operation of the system described in claim 1 (or the method of claim 12). (*See id.* at 7:48-51 ("In various embodiments, the communication between the aforesaid networked assets takes place via a network 201, which may be implemented using any now known or later developed wireless *or wired* network interconnect." (emphasis added)); *see also id.* at 5:52-56 ("The aforesaid power grid data 103 as well as any other data described herein may be received by the cloud-based server 109

---

[5]   Claim 12 of the '277 patent is directed to a method that, for the purpose of this motion, is materially similar to claim 1, *see* Ex. B to Compl. at 12:34-57, such that the arguments herein raised as to claim 1 apply equally to claim 12.

**ELECTRIC MOTOR WERKS, INC. AND ENEL X NORTH AMERICA'S**
**MOTION TO DISMISS AND MPA IN SUPPORT**                    **CASE NO.: 3:19-CV-02516-JSC**

1  via a **wired** or wireless computer data network connection, which are well known to persons of

2  ordinary skill in the art." (emphasis added)).)

3  Moreover, although claim 1 of the '277 patent describes the determination of a "charging

4  pattern for each of the plurality of charging assets" based on timing and output levels, it does not

5  recite or purport to require user-selected charging preferences—which the Complaint specifically

6  describes as Betak's contribution. (*See* Compl. ¶ 47.) The Complaint describes Betak's "user

7  preference" approach as requiring users "to enter their charging preference (e.g., minimizing

8  charging cost versus minimizing charging time, the time of day that the user typically connects

9  their vehicle to the JuiceBox system)." (*Id.*) Claim 1 of the '277 patent, on the other hand, contains

10 no such requirement for user input.

11 Additionally, the '277 patent specification explains that the claimed "charging asset" is a

12 charging station. (Ex. B to Compl. at 7:1-13 ("[C]harging module 233 opera[tes] to determine

13 specific charging patterns for one or more charging assets, *such as EV charging stations*."

14 (emphasis added)).) Unlike Betak's alleged "user preference" approach, which focuses on a given

15 user's charging preferences and behavior, claim 1 of the '277 patent focuses on a charging station's

16 overall activity (*i.e.*, its charge time intervals and output level). (*See id.*) Given that, Betak's

17 allegation that the claimed pattern determination is "based on the user's actual charging behavior"

18 is incorrect. (*See* Compl. ¶ 87.) Neither a user's preference nor her individual charging behavior is

19 required for the system of claim 1 to perform its pattern determination function. Accordingly,

20 claims 1 (and 12) of the '277 patent do not contain Betak's alleged contributions.

21 None of the disputed claims at issue recites Betak's alleged contributions—as he chose to

22 describe and allege them in his Complaint. Betak is claiming joint-inventorship of specific patent

23 claims, but in doing so, he alleges to have contributed ideas that do not appear in those claims. The

24 Complaint therefore fails to allege facts demonstrating that Betak contributed to the conception of

25 at least one claim of the patents at issue. *See Eastman*, 2018 WL 5982440, at *6 ("The Court

26 cannot reasonably infer that an alleged contribution that . . . is seemingly unrelated to the novel

27 aspect of the invention provides a basis for a [corrected inventorship] claim."); *Beco Dairy*, 2015

28 WL 925588, at *5; *Sewall*, 21 F.3d at 415. Accordingly, the Court should dismiss Counts I and II.

**ELECTRIC MOTOR WERKS, INC. AND ENEL X NORTH AMERICA'S**          **CASE NO.: 3:19-cv-02516-JSC**
**MOTION TO DISMISS AND MPA IN SUPPORT**

2.      Because Betak's Alleged Contributions Merely Explained the Current State of the Art, They Were Insignificant

Even if the disputed claims at issue recited Betak's alleged contributions, Betak's alleged contributions were not new or inventive when allegedly disclosed. Rather, they were insignificant given the then-current state of the art. *See Ethicon*, 135 F.3d at 1460 ("One who simply provides the inventor with well-known principles or explains the state of the art without ever having 'a firm and definite idea' of the claimed combination as a whole does not qualify as a joint inventor.").

Again, according to the Complaint, Betak made three specific contributions to the conception of the patents at issue: (1) having Wi-Fi-connected, software-based charging stations that optimize energy usage in response to costs and available incentives; (2) using revenue-grade electric meters to measure charging station usage; and (3) allowing user-selected charging preferences to control energy distribution. (Compl. ¶¶ 24, 45-47.) Betak allegedly communicated his Wi-Fi connectivity idea to Miftakhov on May 15, 2014. (*See id.* ¶ 24.)[6] However, each of these alleged contributions was disclosed in prior art before May 2014. United States Patent Appl. Pub. Nos. 2013/0179061 to Gadh et al. ("Gadh") and 2009/0021213 to Johnson ("Johnson"), for example, predate Betak's alleged May 2014 disclosure of ideas to Miftakhov, and describe the same concepts that Betak alleges he contributed. (*See* Exs. A, B.[7])

---

[6]   The Complaint does not specify when Betak disclosed his other ideas—*i.e.*, revenue-grade electricity meters and user-selected preferences—to Miftakhov and/or EMW. However, Betak alleges his purported efforts began after May 2014. (Compl. ¶ 24-26.)

[7]   Unless otherwise specified, "Ex." refers to exhibits attached to the Declaration of Christopher B. McKinley in support of this motion. *See* McKinley Decl. ¶¶ 2-3. Gadh and Johnson are references cited on the face of the patents at issue—Johnson on the '941 patent and Gadh on the '277 patent. (*See* Exs. A & B to Compl.) The Court should therefore treat Gadh and Johnson as part of the Complaint and consider them when deciding this motion because: (1) they are references cited on the face of the patents at issue, which were themselves attached to and referred to by the Complaint; (2) they are central to Betak's corrected inventorship claims because conception requires consideration of the state of the art; and (3) given that they are pre-grant publications of U.S. patent applications, they cannot reasonably be the subject of disputed authenticity. *See Marder*, 450 F.3d at 448. Alternatively, the Court should take judicial notice of Gadh and Johnson because they are pre-grant publications of U.S. patent applications, which constitute public records the authenticity of which cannot reasonably be disputed. *See Anderson*, 570 F. App'x at 932 n.3; *see also Coffelt v. NVIDIA Corp.*, Case No. CV 16-00457 SJO (KKx), 2016 WL 7507763, at *2 n.3 (C.D. Cal. June 21, 2016) (taking judicial notice of the prosecution history of the asserted patent which "includes the prior art cited during the examination of the patent" (citation omitted)), *aff'd*, 680 F. App'x 1010 (Fed. Cir. 2017); Corporate Defendants' Request for Judicial Notice.

***User Preferences***. Gadh (published in July 2013) teaches Betak's alleged "user preferences" idea. Gadh is directed to "infrastructure modifications and additions to provide capabilities for charging many EVs over a power supply grid." (Ex. A ¶ 7.) Notably, Gadh teaches Betak's "user-preference" idea by disclosing a system that "allows for electric vehicle charging, ***coupled with user preferences as to charge time, charge cost, and charging station capabilities***, without exceeding the power grid capacity." (*Id.* at Abstract (emphasis added); *see also id.* ¶ 60 ("Users may set charging requirements for their vehicles, e.g., maximum time, maximum prices, using a web or smart phone application."), ¶ 62 ("User profile information may include the different vehicles the user operates, a charging profile for each vehicle, . . . as well as a confidence level associated with how accurately the user adheres to his charging profile."), ¶ 100 ("Here, the central server 602 may control simultaneous charging of many vehicles, based on users' profiles, selections of charge modes, allowable charging costs, and allowable time limits for charging.").)

***Wi-Fi Connectivity***. Gadh also discloses Betak's alleged idea of using Wi-Fi connected, software-based charging stations to optimize energy supply by considering utility demands and cost. (*Id.* ¶ 90 ("The previously described smart meters 116 . . . may communicate . . . through . . . WiFi tower 204. Various other methods are used in the overall communication architecture, including, but not limited to: WiFi."), ¶ 65 ("For example, user charging profiles (e.g. time and price requirements) and ***utility time-of-day charging restrictions and maximum load limits*** are used to dynamically schedule charging for one to "n" number of EVs." (emphasis added)).)

Likewise, Johnson (published in January 2009) is directed to improvements for EV charging stations and teaches Betak's alleged idea of optimizing energy supply based on the price of electricity. (Ex. B ¶ 12.) For instance, Johnson's system stores electricity in a storage bank during off-peak hours for later use when energy prices increase. (*Id.* ¶ 52 ("CPU arranges for the electrical charging of a storage bank 42, if any, during power company 'off-peak' hours as defined by the site management and the use of this stored electricity to provide customer charging electricity rather than from the higher priced grid if charge level indicator 44 shows the stored charge level is adequate.").)

**ELECTRIC MOTOR WERKS, INC. AND ENEL X NORTH AMERICA'S**
**MOTION TO DISMISS AND MPA IN SUPPORT**                    **CASE NO.: 3:19-CV-02516-JSC**

1    ***Revenue-Grade Meter***. Furthermore, Gadh discloses Betak's alleged idea of using a

2    "revenue-grade" electric meter capable of monitoring a charger station and communicating related

3    data. (*See* Ex. A ¶ 53 ("In some implementations, RFID and RF sensor technology may be

4    associated with smart meters 116*a* (using an advanced metering infrastructure AMI for usage

5    monitoring and control 116*b*) as well.").) Although Gadh does not describe its smart meters as

6    "revenue-grade," they function in like manner to Betak's purported "revenue-grade" meters.

7    (*Compare* Compl. ¶ 46 (describing "a revenue-grade electric meter . . . which allows the JuiceBox

8    system to accurately measure the energy usage of each charging station"), *with* Ex. A ¶ 239 ("The

9    smart meter or equivalent sensors on the charger continuously monitors the power consumption

10   and sends real time data back to control center through a uniquely designed communication

11   gateway at a 15 minute-interval and this interval is dynamically modifiable via a specific unique

12   architecture.").)

13   As Gadh and Johnson make clear, even if Betak's alleged contributions were claimed, such

14   alleged contributions to the conception of the patents at issue merely explained the then-current

15   state of art, rendering them insignificant. In this case, that is clear based on the prior art references

16   cited on the face of the very patents that Betak claims to have co-invented. *Eastman*, 2018 WL

17   5982440, at *5 ("[A] joint inventor must . . . 'do more than merely explain to the real inventors

18   well-known concepts and/or the current state of the art.'" (citation omitted)). Thus, the Court

19   should dismiss Counts I and II for this independent reason as well.

20   **B.      Betak's Fraud by False Promise Claim Fails to Satisfy Rule 9(b)'s Heightened
             Pleading Standard and Should be Barred by the Economic Loss Rule**
21

22   A fraud by false promise or promissory fraud claim is a subspecies of fraud. *Valencia v.*

23   *Sharp Elecs. Corp.*, No. C 11-06177 JW, 2012 WL 542711, at *2 (N.D. Cal. Feb. 21, 2012) (noting

24   that the elements of a cause of action for fraud under California law are necessary to allege a "fraud

25   by false promise" claim), *aff'd*, 561 F. App'x 591 (9th Cir. 2014). As such, false promise claims

26   are subject to the heightened pleading standards of Rule 9(b). *Id.* Betak's fraud by false promise

27   claim against EMW (Count III) fails because (1) Betak fails to satisfy Rule 9(b)'s heightened

28   pleading standard; and (2) the claim is barred by the economic loss rule.

**ELECTRIC MOTOR WERKS, INC. AND ENEL X NORTH AMERICA'S**                    **CASE NO.: 3:19-cv-02516-JSC**
**MOTION TO DISMISS AND MPA IN SUPPORT**

1.   <u>Betak's Fraud by False Promise Claim Fails to Satisfy Rule 9(b)</u>

Betak's fraud by false promise claim fails to satisfy Rule 9(b)'s heightened pleading standard because it impermissibly lumps Miftakhov and EMW together, without specifying with particularity the role of EMW in the alleged fraud.[8] For that reason alone, Betak's fraud by false promise claim against EMW should be dismissed. *See, e.g.*, *Kennedy v. World Sav. Bank, FSB*, Case No. 14-cv-05516-JSC, 2015 WL 1814634, at *8 (N.D. Cal. Apr. 21, 2015) (dismissing fraud claim against multiple defendants because the plaintiff "fail[ed] to include what specific misrepresentations he imputes to each Defendant; instead, he improperly lumps all Defendants together and fails to assert that any one Defendant made any particular misrepresentation or false statements"); *Cheery Way (USA), Inc. v. Ngoc Diep Duong*, No. C12-0486 JSC, 2012 WL 1670172, at *6 (N.D. Cal. May 14, 2012) (dismissing fraud claim that lacked specific allegations against moving defendants because "[a] complaint 'shot through with general allegations that the "defendants" engaged in fraudulent conduct' does not comply with Rule 9(b)" (citation omitted)).

The Ninth Circuit's decision in *Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007), affirming the dismissal of a fraud claim asserted against a group of defendants, is controlling. In that case, a plaintiff alleged that multiple defendants "lured" plaintiff into purchasing a tax-reduction product, despite knowing that it would be considered unlawful by the IRS. *Id.* at 758-59. The Ninth Circuit affirmed the dismissal of the plaintiff's fraud claim for failure to plead with particularity because the complaint accused two defendants of fraud and, in conclusory fashion, attempted to attribute the conduct of one defendant to another without a basis for doing so:

> The complaint is shot through with general allegations that the "defendants" engaged in fraudulent conduct but attributes specific misconduct only to [certain defendants]. Conclusory allegations that [the other defendants] . . . "were acting as agents [of the properly pled defendants]" and were "active participants in the conspiracy" without any stated factual basis are insufficient as a matter of law.

---

[8]   In his Complaint, Betak alleges that Enel X "knew of the fraudulent scheme" and helped to "perpetuat[e] . . . the fraudulent scheme." (Compl. ¶ 98.) However, Betak has not alleged fraud by false promise against Enel X. (*See* Compl. at Count III (alleging promissory fraud claim against Miftakhov and EMW only).) Because Betak is not alleging a fraud by false promise claim against Enel X, the allegations in Paragraph 98 of the Complaint should not be considered. But even if it was, a claim against Enel X would fail for the same reasons.

16

1  *Id.* at 765.

2      Similarly here, the Complaint merely alleges that "Defendants Miftakhov and EMW

3  engaged in a fraudulent scheme," but fails to allege what misrepresentations EMW made. (*See*

4  Compl. ¶¶ 92-93.) The Complaint generally states that in making the alleged misrepresentations,

5  Miftakhov acted "as the CEO of Defendant EMW," but provides no supporting allegations. (*Id.*)

6  The Complaint does not attribute *any statements or representations* to EMW at all, other than

7  plaintiff's conclusory allegations that the statements were made on behalf of EMW by Miftakhov.

8  The Complaint's allegations that statements by Miftakhov should be attributed to EMW—because

9  Miftakhov was the CEO—are not enough. In a fraud action against corporate defendants, the

10  plaintiff must allege specifics and the "authority to speak." *Flowers v. Wells Fargo Bank, N.A.*, No.

11  C 11-1315 PJH, 2011 WL 2748650, at *6 (N.D. Cal. July 13, 2011) (citing *Tarmann v. State Farm*

12  *Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991)). Further, noting that an individual speaker

13  was an officer of a corporate entity at the time of an alleged statement is not enough. *See Senah,*

14  *Inc. v. Xi'an Forstar S&T Co,*, Case No. 13-cv-04254-BLF, 2014 WL 6065895, at *1, *3 (N.D.

15  Cal. Nov. 12, 2014) (dismissing fraud claim where plaintiff failed to allege that a "Manager,

16  International Department" had the "authority to speak on behalf of the Defendant, as required when

17  pleading the misrepresentation of a corporate defendant").

18      Even if Betak were outside of Rule 9(b)'s heightened pleading standard—he is not—he

19  actually alleges that Miftakhov made the alleged misrepresentations explicitly ***outside*** of his role as

20  an officer of EMW: "Defendant Miftakhov proposed to Plaintiff Betak that their collaboration

21  would be under the auspices of a new company called [EV Juice] rather than through EMW.

22  Defendant Miftakhov explained that EMW was burdened by what Miftakhov described as

23  'baggage' related to its other founders and shareholders." (Compl. ¶ 31.) As a matter of law, this

24  Court may ignore a generalized allegation (e.g., that Miftakhov was acting as EMW's CEO when

25  making statements to Betak) that is directly contradicted by a more specific one (e.g., that

26  Miftakhov made a specific statement indicating he was not acting on EMW's behalf). *See Garrison*

27  *v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1076 (N.D. Cal. 2016) (dismissing plaintiffs' fraudulent

28  concealment claim where "Plaintiffs' specific factual allegations contradict Plaintiffs' general

**ELECTRIC MOTOR WERKS, INC. AND ENEL X NORTH AMERICA'S**          **CASE NO.: 3:19-cv-02516-JSC**
**MOTION TO DISMISS AND MPA IN SUPPORT**

1   allegations"). Having specifically admitted that Miftakhov made alleged representations outside of

2   his role as CEO of EMW, Betak cannot then generally allege in the same pleading that EMW is

3   somehow responsible for those same representations. *See id.*

4       Accordingly, because Betak improperly lumps Miftakhov and EMW together, fails to

5   include particularized allegations as to EMW, and even disclaims EMW's role in the alleged

6   misrepresentations elsewhere in his Complaint, Betak's fraud by false promise claim should be

7   dismissed as against EMW.

8              2.     The Economic Loss Rule Should Bar Betak's Fraud by False Promise Claim

9       Betak's fraud by false promise claim also should be barred by the economic loss rule.

10  Under California law, the economic loss rule precludes recovery for "purely economic loss due to

11  disappointed expectations," unless a plaintiff "can demonstrate harm above and beyond a broken

12  contractual promise." *Multifamily Captive Grp., LLC v. Assurance Risk Managers, Inc.*, 629 F.

13  Supp. 2d 1135, 1145 (E.D. Cal. 2009) (citation omitted). Courts apply the economic loss rule to bar

14  fraud claims where "the damages plaintiffs seek are the same economic losses arising from the

15  alleged breach of contract." *Id.* at 1146. Further, courts have applied the economic loss rule to bar

16  promissory fraud claims. *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092,

17  1103-06 (C.D. Cal. 2015) (dismissing a fraud by false promise claim as barred by the economic

18  loss rule because it was based on pure economic losses and a breach of contract claim).

19      The economic loss rule applies where the "allegations supporting [the plaintiff's underlying

20  tort] claims are wholly repetitious of [his] breach of contract [or] alternative quasi-contract claims,

21  [he] only claim[s] harm 'in the amount of the payment' . . . [and plaintiff] allegedly suffered

22  'purely economic loss due to disappointed expectations' without alleging any 'harm above and

23  beyond a broken contractual promise.'" *Potter v. Chevron Prods. Co.*, Case No. 17-cv-06689-PJH,

24  2018 WL 4053448, at *8 (N.D. Cal. Aug. 24, 2018) (citation omitted).

25      The court's ruling in *Oracle USA, Inc. v. XL Global Services, Inc.*, No. C 09-00537 MHP,

26  2009 WL 2084154 (N.D. Cal. July 13, 2009), is instructive. In *Oracle*, the plaintiff sued the

27  defendant for promissory fraud for failure to pay for software and consulting services, alleging that

28  the defendant never intended to pay, and that the defendant's false promise induced plaintiff to

18

**ELECTRIC MOTOR WERKS, INC. AND ENEL X NORTH AMERICA'S**          **CASE NO.: 3:19-cv-02516-JSC**
**MOTION TO DISMISS AND MPA IN SUPPORT**

1  provide free services. *Id.* at *2. The court dismissed the claim because it found the allegations were

2  straightforward breach of contract claims that were solely economic in nature:

3  > No physical harm or exposure to liability for personal damages has
   > resulted from [defendant]'s withholding of payment. The
4  > allegations of the complaint describe a straightforward breach of a
   > series of agreements to make payment for services provided.
5  > Virtually any time a contract has been breached, the party bringing
   > suit can allege that the breaching party never intended to meet its
6  > obligations. Businesses should not have to worry that simple
   > disputes about bills and contract performance will routinely lead to
7  > the threat of punitive damages.

8  *Id.* at *7.

9  Similarly, in *Multifamily*, the plaintiffs brought breach of contract and fraud claims based

10  on an alleged oral contract whereby plaintiffs would serve as the exclusive broker for the creation,

11  sale, and marketing of the defendant's insurance programs. 629 F. Supp. 2d at 1139. The court

12  explained that the misrepresentations undergirding the plaintiffs' claims were those made in

13  connection with the defendant's "initial promise associated with the alleged oral contract." *Id.* at

14  1146. As a result, the court held the damages sought by the plaintiffs were the same economic

15  losses arising from the alleged breach of contract, and were therefore barred by the economic loss

16  rule. *Id.*

17  Here too, Betak asserts a fraud by false promise claim based purely on the initial promise

18  associated with the alleged quasi-contract: failure to pay for services rendered. Betak's harm is

19  purely economic in nature—Betak's requested relief is the value of the services rendered. He has

20  failed to allege any physical harm or exposure to liability for personal damages. And while other

21  courts have held that the "economic loss doctrine will not bar Plaintiffs' fraud-based claims if

22  Plaintiffs' promissory fraud claim is adequately pled," *see Arena Rest. & Lounge LLC v. S.*

23  *Glazer's Wine & Spirits, LLC*, Case No. 17-CV-03805-LHK, 2018 WL 1805516, at *7 (N.D. Cal.

24  Apr. 16, 2018), the Corporate Defendants respectfully submit that the analysis set forth in *Oracle*

25  and *Multifamily* should be adopted by this Court. *See Oracle*, 2009 WL 2084154, at *7

26  ("Businesses should not have to worry that simple disputes about bills and contract performance

27  will routinely lead to the threat of punitive damages."). Accordingly, the economic loss rule should

28  bar Betak's fraud by false promise claim.

### C.   Betak's Quasi-Contract and Quantum Meruit Claims Fail Because They Are Time-Barred and the Complaint Fails to Plead Facts Specific to EMW

As an initial matter, claims under quasi-contract and quantum meruit (Counts IV and V) are the same claim, such that one count should be dismissed for being duplicative. *See McBride v. Boughton*, 123 Cal. App. 4th 379, 388 n.6 (2004) (noting that quasi-contract is often called quantum meruit); *see also United States ex rel. Bergelectric Corp. v. Sauer, Inc.*, Case No. 5:18-cv-00612-EJD, 2019 WL 1746061, at *7 (N.D. Cal. Apr. 18, 2019) (same).

The remaining claim should be dismissed because it is barred by the two year statute of limitations for quasi-contract claims. Cal. Civ. Proc. Code § 339. "[T]he limitations period begins to run from the time the last service is rendered by the plaintiff to the defendant." *Royal Primo Corp. v. Whitewater W. Indus., Ltd*, Case No. 15-cv-04391-JCS, 2016 WL 4080177, at *12 (N.D. Cal. July 29, 2016) (alteration in original) (citation omitted).

Here, the Complaint was filed in May 2019, yet Betak does not allege that he provided any services relevant to his claims on or after May 2017—the statutory cutoff. Instead, Betak alleges that since June 2015, he worked on the JuiceBox/JuiceNet project on a part-time basis. (Compl. ¶ 67.) He admits that he stopped receiving EMW emails in July 2016. (Compl. ¶ 68.) The most recent date indicating Betak's alleged involvement in EMW is November 2016, when Betak was purportedly listed as a member of its management team. (*Id.*) Because the conduct alleged here occurred more than two years prior to the Complaint being filed, the quasi-contract claim should be barred by the statute of limitations. *See Royal Primo*, 2016 WL 4080177, at *12 (dismissing quasi-contract claim where the plaintiffs "allege[d] that they performed services for [defendant] until 2009, more than two years prior to the filing of [the] action").[9]

---

[9]   Unlike Betak's claim for fraud by false promise, Betak's quasi-contract and quantum meruit claims are not grounded in fraud or mistake. *Compare* Cal. Civ. Proc. Code § 338(d). With respect to his quasi-contract claim, Betak alleges that a contract was formed by an offer from Miftakhov that he accepted: "Betak and [Miftakhov] and EMW, by their conduct and based on their relationship, entered into a contract that may be implied in law. [Miftakhov] offered that if [Betak] contributed his intellectual energy, technical expertise, and business contacts to the effort to build the JuiceBox/JuiceNet product, Betak would share in the proceeds from the commercialized product, including in any sale of the business. [Betak] accepted and did contribute his efforts and energies, and Betak's contributions helped produce a viable commercial product." (Compl. ¶ 102.) Accordingly, Betak's quasi-contract and quantum meruit claims are an action brought "upon a
*(cont'd)*

---

**ELECTRIC MOTOR WERKS, INC. AND ENEL X NORTH AMERICA'S**
**MOTION TO DISMISS AND MPA IN SUPPORT**                    **CASE NO.: 3:19-cv-02516-JSC**

1        Regardless, even if Betak's quasi-contract claim were timely (it is not), it fails to state a

2  plausible claim as against EMW. To state a claim for quasi-contract or quantum meruit under

3  California law, the plaintiff must allege "(1) that the plaintiff performed the services for the

4  defendant; (2) ***that they were rendered at defendant's request***; and (3) that they are unpaid."

5  *Summit Estate, Inc. v. Cigna Healthcare of Cal., Inc.*, Case No. 17-CV-03871-LHK, 2017 WL

6  4517111, at *11 (N.D. Cal. Oct. 10, 2017) (emphasis added) (citation omitted).

7        As alleged by Betak, Miftakhov alone requested Betak perform services, not EMW. The

8  Complaint acknowledges that Miftakhov presented the offer of employment to Betak (Compl.

9  ¶ 32), but in an attempt to hold EMW liable, the Complaint merely concludes that Miftakhov "was

10  the CEO of EMW" when the promise was made. (*Id.* ¶ 105.) Such allegations are insufficient to

11  confer liability for Miftakhov's conduct onto EMW. Indeed, and as explained above, Betak alleges

12  exactly the opposite, that Miftakhov's misrepresentations were specifically made outside of his role

13  as EMW's CEO. (*Id.* ¶ 31.) Because EMW did not request Betak perform services for it, Betak has

14  failed to allege a plausible quasi-contract claim against EMW.  *See Summit Estate*, 2017 WL

15  4517111, at *11 (dismissing quantum meruit claim where "Plaintiffs have not alleged enough facts

16  to plausibly suggest that Defendants *requested* Plaintiff to render . . . services").

17      **D.**    **The Complaint Fails to Plead Facts Supporting Betak's Claim Under**

18          **California's Unfair Competition Law ("UCL")**

19        The UCL allows a claim for "any [1] unlawful, [2] unfair or [3] fraudulent business act or

20  practice." Cal. Bus. & Prof. Code § 17200. Betak has failed to plead a plausible claim (Count VI)

21  under any of these three prongs.

22

23

24

25

_____

*(cont'd from previous page)*

26  contract, obligation or liability not founded upon an instrument of writing," Cal. Civ. Proc. Code
§ 339, and therefore are subject to the two-year statute of limitations. Even if Betak tries to argue

27  otherwise—which he cannot—his quasi-contractual claims fail here for the same reason his fraud

28  by false promise claim does—failure to plead under the heightened pleading standard of Rule 9(b).

**ELECTRIC MOTOR WERKS, INC. AND ENEL X NORTH AMERICA'S**      **CASE NO.: 3:19-cv-02516-JSC**
**MOTION TO DISMISS AND MPA IN SUPPORT**

1      1.      The UCL Claim Under the Unlawful Prong Is Preempted or Derivative of
2              Common Law Claims That Cannot Satisfy the Unlawful Prong

3      Betak's UCL claim under the unlawful prong should be dismissed because it (1) relies on

4 the inventorship claim; or (2) relies on common law claims that cannot satisfy the unlawful prong.

5      "[T]he field of federal patent law preempts any state law that purports to define rights based

6 on inventorship." *James v. J2 Cloud Servs. Inc.*, Case No. 2:16-cv-05769-CAS(PJWx), 2018 WL

7 6092461, at *4 (C.D. Cal. Nov. 19, 2018) (alteration in original) (citation omitted). Thus, to the

8 extent Betak's unlawful UCL claim relies on "Defendants Miftakhov and EMW's failure to

9 identify Plaintiff Betak as an inventor in filing and prosecuting various patent applications"

10 (Compl. ¶ 109.a), it is preempted by federal patent law. *See James*, 2018 WL 6092461, at *6

11 (preempting California unfair competition claim "because it is entirely based on plaintiff's

12 assertion of sole inventorship of the [patent at issue]").

13      Additionally, "[w]here a plaintiff cannot state a claim under [another] law, he or she cannot

14 state a UCL claim [under the unlawful prong] either." *Suarez v. Bank of Am. Corp.*, Case No. 18-

15 cv-01202-MEJ, 2018 WL 2431473, at *31 (N.D. Cal. May 30, 2018). Alleging a common law

16 violation is insufficient. *See Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1150

17 (N.D. Cal. 2010) (noting that "common-law claims cannot form the basis for a UCL claim").

18 Because Betak's remaining California common law claims cannot support his UCL claim under the

19 unlawful prong, the UCL claim should be dismissed as to this prong.

20      2.      The Complaint Fails to Plead Facts Supporting a UCL Claim Under the
21              Unfair Prong

22      The California Supreme Court has defined "unfair" conduct as "conduct that threatens an

23 incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because

24 its effects are comparable to or the same as a violation of the law, or otherwise significantly

25 threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th

26 163, 187 (1999).[10] Betak has "not alleged an antitrust injury, i.e. harm to competition, which is

27 ──────────────
   [10] "Before *Cel-Tech*, courts held that 'unfair' conduct occurs when that practice 'offends an
28 established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or
                                                                                    *(cont'd)*

                                        22

1    distinct from harm to a competitor. On this basis alone, the 'unfair' competition claim is subject to

2    dismissal." *UCAR Tech. (USA) Inc. v. Yan Li*, Case No. 5:17-cv-01704-EJD, 2018 WL 2555429, at

3    *7 (N.D. Cal. June 4, 2018); *see Creative Mobile Techs., LLC v. Flywheel Software, Inc.*, Case No.

4    16-cv-02560-SI, 2017 WL 679496, at *6 (N.D. Cal. Feb. 21, 2017) (granting motion to dismiss

5    UCL claim under the unfair prong because "the Court finds that Flywheel has failed to allege an

6    incipient violation of antitrust law or conduct that violates 'the policy or spirit of one of those laws

7    because its effects are comparable to or the same as a violation of the law'" (citation omitted)); *see*

8    *also Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1137 (9th Cir. 2014) (finding that "very general

9    allegation[s]" did not suffice to allege what "amounts to a violation of antitrust laws" or conduct

10   that "otherwise significantly threatens or harms competition" (citation omitted)).

11                    3.    <u>The Complaint Fails to Plead Facts Supporting a UCL Claim Under the</u>
                           <u>Fraudulent Prong Sufficient to Meet the Heightened Rule 9(b) Standard</u>

12

13           Betak's UCL claim under the fraud prong fails because Betak has not adequately pleaded

14   that the Corporate Defendants engaged in fraudulent conduct. *See Minkler v. Apple, Inc.*, 65 F.

15   Supp. 3d 810, 821 (N.D. Cal. 2014) ("Because Plaintiff has not pled with particularity the

16   circumstances surrounding Apple's fraudulent behavior, she has failed to meet the 9(b) pleading

17   standards for her claims sounding in fraud and the Court will dismiss the . . . UCL counts against

18   Apple."). In order to plead a fraud-based UCL claim, Betak must specify the "'who, what, when,

19   where, and how' of the misconduct alleged and detail the 'time, place, and specific content of the

20   false representations.'" *Id.* (citation omitted); *see* Sec. II., *supra* (describing the heightened

21   pleadings standard). A fraud claim against multiple defendants should be dismissed when the

22   _____

*(cont'd from previous page)*
23   substantially injurious to consumers.'" *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 866 (9th Cir. 2018)
     (citation omitted). Betak is not a consumer. Therefore, the unfair prong claim analysis is done
24   under *Cel-Tech*'s "different, more concrete, definition of unfair," that applies to claims brought by
     competitors. *Id.* Regardless, even under the "consumer standard," Betak's claim fails because he
25   failed to allege that the Corporate Defendants violated any public policy, or that their actions were
     "immoral, unethical, oppressive, or unscrupulous." *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d
26   843, 858 (N.D. Cal. 2012) (dismissing UCL claim because "[a]lthough [plaintiff] makes
     conclusory statements that [defendant]'s alleged conduct is unfair, he does not reference any
27   established public policy that [defendant]'s actions have violated or claim that the conduct is
     immoral, unethical, oppressive, or unscrupulous").

28

**ELECTRIC MOTOR WERKS, INC. AND ENEL X NORTH AMERICA'S**                    **CASE NO.: 3:19-cv-02516-JSC**
**MOTION TO DISMISS AND MPA IN SUPPORT**

1  plaintiff "fail[ed] to include what specific misrepresentations he imputes to each Defendant; [and]

2  instead . . . improperly lumps all Defendants together and fails to assert that any one Defendant

3  made any particular misrepresentation or false statements"). *Kennedy*, 2015 WL 1814634, at *8.

4  As previously discussed, Betak's UCL claim under the fraudulent prong fails here because Betak

5  improperly lumps all of the defendants together and fails to include particularized allegations (or

6  any allegations for that matter) as to the Corporate Defendants.

7    **E.    Betak's Constructive Trust Claim Is an Equitable Remedy, Not a Claim**

8       Under California law, a constructive trust is an equitable remedy, not a cause of action. *See*

9  *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 908-09 (9th Cir. 2010); *Kim v. Westmoore*

10 *Partners, Inc.*, 201 Cal. App. 4th 267, 277 n.4 (2011) (holding that a constructive trust is a

11 "*remed[y]*, not [a] cause[] of action"). Betak's constructive trust claim should therefore be

12 dismissed because it is not a claim. *See Kim*, 201 Cal. App. 4th at 277 n.4 (refusing to consider a

13 constructive trust a "cause[] of action" on default judgment because constructive trust is an

14 equitable remedy, not a cause of action).

15   **F.    The Complaint Fails to Plead Facts Supporting an Accounting Claim**

16      "A cause of action seeking an accounting may be maintained when (1) a relationship exists

17 between a plaintiff and defendant that requires an accounting, and (2) some balance is due to the

18 plaintiff that can only be ascertained by an accounting." *Shkolnikov v. JPMorgan Chase Bank*, No.

19 12-03996 JCS, 2012 WL 6553988, at *23 (N.D. Cal. Dec. 14, 2012). The Complaint does not

20 allege any fiduciary relationship between the parties, so Betak's accounting claim must rest on

21 pleading that "some balance is due . . . that can only be ascertained by an accounting." *Id.* But the

22 Complaint fails to do so. Instead, the Complaint merely recites, in a conclusory fashion, that the

23 "value of the transferred assets and property are unknown [and] cannot be ascertained without an

24 accounting." (Compl. ¶ 117.) This assertion, however, belies the specific facts alleged in the

25 Complaint, which include Betak's alleged equity in EMW, and the alleged purchase price for

26 EMW. Therefore, Betak's accounting claim should be dismissed because the Complaint fails to

27 state (nor could it reasonably) that the complexity of the Corporate Defendants' accounts requires

28 an accounting. *See Shkolnikov*, 2012 WL 6553988, at *23 ("[A]n action for accounting is not

24

1  available where the plaintiff alleges the right to recover a sum certain or a sum that can be made

2  certain by calculation." (citation omitted)); *see also Ginocchi v. Grand Home Holdings, Inc.*, Civil

3  No. 10cv2115-L(BGS), 2011 WL 3474936, at *2-3 (S.D. Cal. Aug. 9, 2011) (dismissing claim for

4  accounting to determine payment because calculations could be made based on contract).

5        Additionally, the accounting claim should be dismissed because it is a derivative claim that

6  relies on poorly pled claims. Since all other claims against the Corporate Defendants should be

7  dismissed, the accounting claim should be dismissed as well. *Janis v. Cal. State Lottery Comm'n*,

8  68 Cal. App. 4th 824, 833-34 (1998) (dismissing accounting claim where it was the sole remaining

9  claim because "[a] right to an accounting is derivative; it must be based on other claims").

10 **V.    CONCLUSION**

11       For the foregoing reasons, the Corporate Defendants respectfully request that the Court

12 enter an Order dismissing: (1) Counts I, II, and VI-VIII against the Corporate Defendants; and (2)

13 Counts III-V against EMW.

14 Date: July 3, 2019                    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

15                                       By:  */s/   John M. Neukom*
                                             JOHN M. NEUKOM
16
                                             Attorneys for Defendants,
17                                           ENEL X NORTH AMERICA and
                                             ELECTRIC MOTOR WERKS, INC.
18

19

20

21

22

23

24

25

26

27

28