LANCE A. ETCHEVERRY (SBN 199916)
lance.etcheverry@skadden.com
JOHN M. NEUKOM (SBN 275887)
john.neukom@skadden.com
CHRISTOPHER B. MCKINLEY (SBN 306087)
christopher.mckinley@skadden.com
MICHELLE KAO (SBN 322758)
michelle.kao@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, California 94301
Telephone:     (650) 470-4500
Facsimile:      (650) 470-4570

ABRAHAM A. TABAIE (SBN 260727)
abraham.tabaie@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone:     (213) 687-5000
Facsimile:      (213) 687-5600

Attorneys for Defendants,
ENEL X NORTH AMERICA and
ELECTRIC MOTOR WERKS, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| GEORGE BETAK, an individual, | CASE NO.: 3:19-cv-02516-JSC |
| Plaintiff, | **REPLY IN SUPPORT OF ELECTRIC MOTOR WERKS, INC. AND ENEL X NORTH AMERICA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| v. | |
| VALERY MIFTAKHOV, an individual; ELECTRIC MOTOR WERKS, INC., a Delaware corporation; and ENEL X NORTH AMERICA, a Delaware corporation, | Date:   September 5, 2019<br>Time:   9:00 a.m.<br>Judge:  Hon. Jacqueline Scott Corley |
| Defendants. | Complaint Filed: May 9, 2019 |

1

**TABLE OF CONTENTS**

2

**PAGE**

3  TABLE OF AUTHORITIES ...................................................................................................ii

4  INTRODUCTION ...............................................................................................................1

5  ARGUMENT ......................................................................................................................2

6  I.  Betak Fails To State A Plausible Claim For Corrected Inventorship Because
7       His Alleged Contributions Are Not Recited In The Claims At Issue .......................2

8       A.  The Contributions Betak Alleges In His Complaint Are Not Claimed
             In The Patents .................................................................................................2

9       B.  Betak Cannot Fix His Deficient Complaint With New, Unpleaded
10           Allegations ....................................................................................................4

        C.  Betak Cannot Rely On Ideas Developed By Joint Collaborators...................5

11 II.  Betak's Claim For Corrected Inventorship Also Fails Because His Alleged
12       Contributions, If Claimed, Would Be Insignificant .................................................6

13       A.  Betak's Claimed Contributions Are Insignificant Because They Were
              Disclosed In Prior Art Referenced In The Patents At Issue..........................6

14       B.  Gadh And Johnson Are Judicially Noticeable ...............................................7

15 III.  Betak's Promissory Fraud Claim Against EMW Fails For Not Meeting Rule
16        9(b)'s Heightened Standard And For Being Barred By The Economic Loss
          Rule .........................................................................................................................9

17 IV.  Betak's Breach Of Implied Contract Claims Against EMW Fail For Being
18        Time-Barred And For Failing To Allege Specific Facts Against EMW.................11

19 V.  Betak Does Not Allege Facts Plausibly Establishing A UCL Claim......................12

20 VI.  The Court Should Dismiss Betak's Constructive Trust Claim Because It Is
21        Not A Cause Of Action ..........................................................................................14

22 VII.  Betak's Accounting Claim Fails Because The Complaint Does Not Allege A
           Sufficient Relationship Or An Unascertainable Value............................................15

23 CONCLUSION.................................................................................................................15

24

25

26

27

28

1

## TABLE OF AUTHORITIES

PAGE(S)

2

3  **Cases**

4  *Almasi v. Equilon Enterprises, LLC*,
       2012 WL 3945528 (N.D. Cal. Sept. 10, 2012) ........................................................................ 14

5
   *Anderson v. Kimberly-Clark Corp.*,
6      570 F. App'x 927 (Fed. Cir. 2014) ................................................................................. 2, 3, 8

7  *Beco Dairy Automation, Inc. v. Global Tech Systems, Inc.*,
       2015 WL 925588 (E.D. Cal. Mar. 3, 2015) ............................................................................. 9

8
   *Cel-Tech Communications, Inc. v. L.A. Cellular Telephone Co.*,
9      20 Cal. 4th 163 (1999) ........................................................................................................... 13

10 *CODA Development S.R.O. v. Goodyear Tire & Rubber Co.*,
       916 F.3d 1350 (Fed. Cir. 2019) .......................................................................................... 7, 8

11
   *Copart Inc. v. Sparta Consulting, Inc.*,
12     2015 WL 3622618 (E.D. Cal. June 9, 2015) ......................................................................... 14

13 *Design Data Corp. v. Unigate Enterprise, Inc.*,
       2013 WL 360542 (N.D. Cal. Jan. 29, 2013) .......................................................................... 10

14
   *Eastman v. Apple Inc.*,
15     2018 WL 5982440 (N.D. Cal. Nov. 14, 2018) ...................................................................... 7, 9

16 *Ecojet, Inc. v. Pure Spa Components, Inc.*,
       2017 WL 3485780 (C.D. Cal. Feb. 10, 2017) ................................................................. 5, 6, 9

17
   *Ethicon, Inc. v. U.S. Surgical Corp.*,
18     135 F.3d 1456 (Fed. Cir. 1998) ............................................................................................... 7

19 *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*,
       362 F.3d 1367 (Fed. Cir. 2004) ....................................................................................... 12, 13

20
   *Heineke v. Santa Clara University*,
21     2017 WL 6026248 (N.D. Cal. Dec. 5, 2017) ........................................................................... 4

22 *James v. J2 Cloud Services Inc.*,
       2018 WL 6092461 (C.D. Cal. Nov. 19, 2018) ....................................................................... 13

23
   *Janis v. Cal. State Lottery Commission*,
24     68 Cal. App. 4th 824 (1998) .................................................................................................. 15

25 *Kennedy v. World Savings Bank, FSB*,
       2015 WL 1814634 (N.D. Cal. Apr. 21, 2015) ....................................................................... 10

26
   *Kim v. Westmoore Partners, Inc.*,
27     201 Cal. App. 4th 267 (2011) ................................................................................................ 14

28 *Louis v. Nailtiques Cosmetic Corp.*,
       423 F. App'x 711 (9th Cir. 2011) .......................................................................................... 14

ii

*Lozano v. AT&T Wireless Services Inc.*,
    504 F.3d 718 (2007) .................................................................................................. 14

*McBride v. Boughton*,
    *123 Cal. App. 4th 379 (2004)* ................................................................................. 11

*Minkler v. Apple, Inc.*,
    65 F. Supp. 3d 810 (N.D. Cal. 2014) .................................................................... 14

*Oracle USA, Inc. v. XL Global Services, Inc.*,
    2009 WL 2084154 (N.D. Cal. July 13, 2009) ...................................................... 11

*Senah, Inc. v. Xi'an Forstar S&T Co.*,
    2014 WL 6065895 (N.D. Cal. Nov. 12, 2014) ................................................ 9, 11

*Sewall v. Walters*,
    21 F.3d 411 (Fed. Cir. 1994) ..................................................................................... 3

*Shkolnikov v. JPMorgan Chase Bank*,
    2012 WL 6553988 (N.D. Cal. Dec. 14, 2012) .................................................... 15

*South Bay Chevrolet v. General Motors Acceptance Corp.*,
    72 Cal. App. 4th 861 (1999) ................................................................................... 14

*Suarez v. Bank of America  Corp.*,
    2018 WL 2431473 (N.D. Cal. May 30, 2018) ..................................................... 13

*Summit Estate, Inc. v. Cigna Healthcare of Cal., Inc.*,
    2017 WL 4517111 (N.D. Cal. Oct. 10, 2017) ..................................................... 12

*U.S. Surgical Corp. v. Ethicon, Inc.*,
    103 F.3d 1554 (Fed. Cir. 1997) ................................................................................ 5

*Vess v. Ciba–Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ................................................................................ 10

*Zakk v. Diesel*,
    33 Cal. App. 5th 431 (2019) .................................................................................... 11

*Zenith Electronics Corp. v. Exzec, Inc.*,
    182 F.3d 1340 (Fed. Cir. 1999) .............................................................................. 13


**Statutes**

Cal. Civ. Proc. Code § 339 ............................................................................................ 11

**INTRODUCTION**

1

2   Betak's Opposition[1] attempts to shore up his Complaint, but falls short. To defeat the

3   Corporate Defendants' challenge to his corrected-inventorship claim, Betak needed to identify

4   (i) where in the Complaint his alleged contributions were defined, and (ii) where those same

5   contributions appear in the disputed patent claims. He did neither. Instead, Betak's Opposition

6   rehashes an assortment of ideas not claimed in the disputed patents (many of which, Betak

7   acknowledges, were not his own), suggesting that some amalgamation of such ideas might create a

8   viable claim for corrected inventorship.

9   Betak's Opposition approach is flawed. The Complaint fails to state a plausible claim for

10  corrected inventorship because Betak's alleged contributions (as stated in the Complaint) are:

11  (1) not claimed in the patents-at-issue; and furthermore (2) insignificant, merely explaining the

12  then-state of the art. (Mot. 8-13.) As to the latter point: In view of the prior art references cited on

13  the face of the patents at issue—Gadh and Johnson—the Complaint fails to allege facts that even if

14  accepted as true would establish that Betak's alleged contributions were material. (*Id.* at 13-15.)

15  Betak asks the Court to disregard those prior art references by disputing their scope and content.

16  But as explained in the Corporate Defendants' Reply in support of their Request for Judicial

17  Notice, filed concurrently herewith, that request to disregard the disputed patents' expressly cited

18  prior art should not be granted.

19  Betak's Opposition, likewise, does not repair the Complaint's defects in his remaining

20  claims. For instance, Betak's promissory fraud claim against EMW fails for not meeting Rule

21  9(b)'s heightened particularity standard and for being barred by the economic loss rule. His breach

22  of implied contract claims against EMW fail for being time-barred and for failing to allege specific

23  facts against EMW. His UCL claims fails principally because his promissory fraud claim against

24  EMW was not pleaded with particularity, and not pleaded at all against Enel X. His constructive

25  trust claim by its very nature is defective because it is not a claim recognized under California law.

26

27  [1]    References to "Opposition" refer to Betak's Opposition to the Corporate Defendants'
Motion to Dismiss ("Motion"). Unless otherwise noted, all emphases and alterations in quotation

28  are added, and all citations and internal quotation marks are omitted from all quoted material. All
capitalized terms have the same meaning as they did in the Motion, except as noted below.

**REPLY ISO EMW AND ENEL X NORTH AMERICA'S MOT. TO DISMISS        CASE NO.: 3:19-cv-02516-JSC**

1   And his accounting claim fails because the Complaint does not allege a sufficient relationship

2   between Betak and EMW or Enel X, or an unascertainable value for Enel X's acquisition of EMW.

3       Accordingly, the Court should grant the instant motion in full.

4                                    **ARGUMENT**

5   **I.   Betak Fails To State A Plausible Claim For Corrected Inventorship Because His**
        **Alleged Contributions Are Not Recited In The Claims At Issue**

6

7       A.   The Contributions Betak Alleges In His Complaint Are Not Claimed In The Patents

8       The Complaint fails to allege facts plausibly showing that Betak's alleged contributions are

9   recited in the claims at issue. That is, the claims Betak identifies in the '941 and '227 patents do

10  not recite a Wi-Fi connected charging station system that optimizes energy usage based on energy

11  costs, revenue-grade meters, or user-selected charging preferences. (*See* Compl. ¶¶ 24, 45-47.) And

12  although it is true that the Complaint should be viewed in a light most favorable to Betak, the Court

13  "need not [] accept as true allegations that contradict matters properly subject to judicial notice or

14  by exhibit." *See Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014).

15  Indeed, as explained in the Motion, review of the claims at issue reveals that Betak's alleged

16  contributions are not present. (*See* Mot. 6-13.)

17      Paragraphs 81 and 87 of the Complaint contain Betak's specific allegations regarding where

18  his alleged contributions purportedly appear in the claims at issue.

19      **The '941 Patent:** Referring to the '941 patent, paragraph 81 of the Complaint expressly

20  alleges that claims 1 and 11 recite "the 'connected' electric vehicle charging system and method

21  that Betak first proposed to Defendant Miftakhov in May 2014 . . . [and] the use of an electricity

22  meter at the charging station." (Compl. ¶ 81.) But these alleged contributions are not in claims 1

23  and 11. According to the Complaint, the May 2014 "connected" system idea involved Wi-Fi

24  connected charging stations that controlled energy supply based on data from grid operators and

25  energy providers.[2] That concept is not claimed in claims 1 or 11 of the '941 patent. And Betak's

26

27  _____
    [2]     "Plaintiff Betak . . . proposed the idea of making a new JuiceBox product in which every
    JuiceBox unit would be Wi-Fi enabled and 'connected' to the internet, and in which the units could
28  collectively operate in communication with other entities and information sources, such as grid
    operators and energy providers." (Compl. ¶ 24.)

                                            2

1  purported "electricity meter" idea, which Betak describes as "revenue-grade" (*id.* ¶ 46), is not

2  claimed either. Betak incorrectly asserts that his alleged revenue-grade-meter contribution must

3  necessarily be covered by the "first electricity meter" of claim 1 of the '941 patent because

4  "'meter' of claim 1 may include different meters, including 'revenue grade meters.'" (Opp'n 8,

5  n.1.) Betak is wrong. The inquiry here focuses on what Betak allegedly contributed and where it is

6  claimed. *See Sewall v. Walters*, 21 F.3d 411, 415 (Fed. Cir. 1994) ("Determining 'inventorship' is

7  nothing more than determining who conceived the subject matter at issue, [and] whether that

8  subject matter is recited in a claim."). Betak allegedly contributed the revenue-grade meter idea.

9  (Compl. ¶ 46.) Given that neither the claims nor specification recites or even refers to a "revenue-

10  grade" meter, Betak's contribution is not claimed.

11    **The '277 Patent:** As to the '277 patent, Betak argues that the Court must accept as true his

12  allegations that his user-selected-preferences idea is captured by claims 1 and 12 because they

13  "require the determination of a 'charging pattern for each of the plurality of charging assets'" and

14  also requires controlling charging assets according to the charging pattern. (Opp'n 12; Compl.

15  ¶ 87.) But a "court need not [] accept as true allegations that contradict matters properly subject to

16  judicial notice or by exhibit." *Anderson*, 570 F. App'x at 931. Here, the '277 patent contradicts

17  Betak's allegation that his user-selected-preferences idea is claimed. (*See* Ex.[3] D at 11:24-51.) For

18  instance, Betak alleges to have conceived of a "'user preference' approach" that controlled

19  charging stations based on user-selected "charging preferences (e.g., minimizing charging cost

20  versus minimizing charging time, the time of day that the user typically connects their vehicle to

21  the JuiceBox system)." (Compl. ¶ 47.) In contrast, claims 1 and 12 of the '277 patent claim a

22  charging module for determining/recognizing[4] charging patterns and a charger asset module that

23  charges assets based on the determined charging patterns. (Ex. D at 11:24-51.) Entering charging

---

[3]    "Ex." refers to exhibits to the McKinley Declaration filed in support of the Corporate Defendants' Motion to Dismiss and Request for Judicial Notice, unless specified otherwise.

[4]    Betak's Opposition attempts to draw a distinction between "recognizing" and "determining," suggesting that the former is backwards looking, while the latter looks forward. (Opp'n 12-13.) This is a distinction without a difference because neither term limits observation in one direction or another, and, in either case, control of the claimed charging stations does not depend on user-selected charging preferences; it instead depends on "the determined charging patterns." (Ex. D at 11:24-51.)

preferences is different from observing charging patterns; thus, the '277 patent does not claim Betak's alleged user-selected preferences idea.

Betak also argues, incorrectly, that the "data aggregation module" of claim 1 of the '277 patent reads on his user-selected preferences idea because the specification describes a system that stores and manages users' "settings, preferences, patterns and other user-related data." (Opp'n 13; Ex. D at 7:31-52.) But that portion of the specification refers to a "user account module 236," which is not claimed either. (*See* Ex. D at 7:31-52, 11:24-51.) Moreover, the claims make control of the charging asset dependent on "charging patterns," not "user preferences," which further highlights the difference between Betak's alleged contribution and what is actually claimed. (*Id.*)

B.   Betak Cannot Fix His Deficient Complaint With New, Unpleaded Allegations

In an effort to repair his Complaint, Betak argues in his Opposition new facts that he never alleged in the Complaint. For instance, Betak contends that the Complaint "alleges specifically" that he conceived of "a first electricity meter" for reading a first electricity supply line to a charging station that is coupled to a "controller" that controls the charging station based on the reading, as recited in claim 1 of the '941 patent. (Opp'n 5-6.) Tellingly, Betak cites in his Opposition no paragraph in the Complaint containing that allegation and, indeed, he could not because that "specific" allegation is nowhere in the Complaint. As another example, Betak now argues that his contributions "are reflected in" the "controller," and that he "adequately allege[d] that he contributed to . . . the overall 'connected' system, the implementation of renewable energy sources, and the use of meters of claims 1 and 11." (Opp'n 9.) Yet, again, the Complaint contains no such allegations, and Betak's Opposition cites to no such allegations.

The Complaint must stand on its own, absent help from unpleaded allegations in opposition papers or attorney argument. *Heineke v. Santa Clara Univ.*, 2017 WL 6026248, at *16 (N.D. Cal. Dec. 5, 2017) ("[T]the complaint may not be amended by briefs in opposition to a motion to dismiss."). Because Betak's inventorship-related allegations cannot by themselves establish a plausible claim, the Court should dismiss Counts I and II.[5]

---

[5]   Betak's argument that claim construction necessitates denial of this motion should be rejected. First, he cites no authority for that proposition. (Opp'n 9-10.) Second, Betak raises no dispute as to the scope of the claims at issue. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d
*(cont'd)*

1    C.    Betak Cannot Rely On Ideas Developed By Joint Collaborators

2    Betak improperly conflates allegations regarding ideas developed through joint

3    collaboration (by others) with those developed (allegedly) by him. That conflation is not permitted

4    under the patent laws. A claimed inventor's participation in joint collaboration sessions without

5    specific allegations identifying what the claimed inventor contributed does not support a corrected-

6    inventorship claim. *See Ecojet, Inc. v. Pure Spa Components, Inc.*, 2017 WL 3485780, at *5 (C.D.

7    Cal. Feb. 10, 2017) (finding plaintiff's allegation that he was "part of a team that developed" the

8    patented design insufficient to plausibly establish a corrected-inventorship claim).

9    In his Opposition, Betak now argues that he conceived of several unclaimed ideas that

10   resulted from his collaboration with "Miftakhov and others." (Opp'n 4, 8.) The Complaint,

11   however, alleges that these ideas resulted from joint collaboration with others, not Betak himself.

12   (Compl. ¶¶ 25-27.) According to the Complaint, Betak met with Miftakhov on May 15, 2014, and

13   shared his idea of a Wi-Fi connected electric vehicle charging station system that controlled energy

14   supply based on data from grid operators and utility providers. (Compl. ¶ 24.)[6] Thereafter, the two

15   of them and others (allegedly) began refining his (alleged) networked system idea. (*Id.* ¶ 25.) Those

16   refinements, described by Betak as "joint efforts" by the collective, allegedly yielded several ideas

17   for which Betak now claims ownership, including using cloud-based software, using energy from

18   renewable sources, and using incentives to adjust usage patterns. (Opp'n 4; Compl. ¶¶ 25-27.) But

19   the Complaint expressly alleges that these ideas resulted from the "joint efforts" of "Miftakhov and

20   others," and that Betak "helped refine" them, without ever alleging how. (Compl. ¶¶ 25-27.)[7]

21

22
   _____
   *(cont'd from previous page)*

23   1554, 1568 (Fed. Cir. 1997) (holding that claim construction is required only "when the meaning or
     scope of technical terms and words of art is unclear and in dispute and requires resolution [] to

24   determine"). Thus, claim construction is not a prerequisite for the Court's granting of this motion.

25   [6]    As the Motion explains, this alleged contribution is not in the claims at issue. (Mot. 8-10.)
     [7]    Betak's argument in his Opposition, that "no other personnel at EMW had the capability to

26   bring Mr. Betak's conceptions to life" (Opp'n 4), is spurious given: (1) it is not in the Complaint;
     and (2) Miftakhov has a Ph.D. in physics from Princeton, *see*

27   https://www.linkedin.com/in/vmiftakhov/, founded EMW, *id.*, and, by Betak's own admission,
     created a conversion kit to transform combustion engine vehicles into electric vehicles on his own,

28   and without Betak (Compl. ¶ 20). Further, the argument is irrelevant since Betak has failed to
     identify any ideas that he contributed to the patents-at-issue.

1    An omitted inventor cannot, as Betak attempts here, prove contribution by alleging to have

2  been involved in an idea-bearing collaborative effort. Rather, he must state definitively what he

3  contributed and where that contribution is claimed. *See Ecojet*, 2017 WL 3485780, at *5.

4    The Corporate Defendants derived Betak's alleged contributions from the Complaint;

5  namely, and understandably, from the section entitled "Plaintiff Betak's Contributions To . . . The

6  Related Patent Filings." (Compl. at 10.) More specifically, paragraphs 24 and 45 through 48

7  describe what Betak alleges to have contributed to the collaboration, and paragraphs 81 and 87

8  respectively purport to describe where those contributions are claimed in the '941 and '277 patents.

9  (*Id.* at 10-11, 18-20.) As explained above, although Betak now relies on paragraphs 25 through 28

10  of his Complaint in an attempt to shore up his corrected-inventorship claims (Opp'n 4, 8-9), they

11  contain allegations of ideas generated by a collaborative, not by Betak himself. (Compl. at 7-8.)

12    Betak also alleges that the Corporate Defendants mischaracterize his contributions, but he

13  offers no materially different characterization. (*See* Opp'n 8, 12.) Still, Betak takes exception to the

14  characterization of his contribution as "Wi-Fi enabled, software-based charging stations that

15  optimize energy usage in response to costs and available incentives," arguing that his contributions

16  are "far more robust." (Opp'n 8.) Betak also argues that the Corporate Defendants misrepresent his

17  idea to control energy distribution based on user-selected charging preferences. (Opp'n 12.) But

18  Betak's restatement of his alleged ideas—which he muddles with the ideas of others (*see* Compl.

19  ¶¶ 24-27, 45-48)—does not differ materially from the Corporate Defendants' framing of Betak's

20  contributions in their Motion.

21  **II.    Betak's Claim For Corrected Inventorship Also Fails Because His Alleged**
    **Contributions, If Claimed, Would Be Insignificant**
22

      A.    Betak's Claimed Contributions Are Insignificant Because They Were Disclosed In
23          Prior Art Referenced In The Patents At Issue

24    As explained in the Motion, even if the patents at issue claimed Betak's alleged

25  contributions, which they do not, the Complaint still fails to state a plausible corrected inventorship

26  claim because his alleged contributions were disclosed in prior art references cited in the patents at

27  issue. (Mot. 13-15.) For instance, Gadh discloses a system of Wi-Fi connected charging stations

28  that controls energy supply based on data from grid operators or energy providers (Ex. A ¶¶ 65,

1  90); uses revenue-grade meters (*id.* ¶¶ 46, 53); and controls charging stations based on user-

2  selected preferences (*id.* at Abstract and ¶¶ 60, 62, 100). Similarly, Johnson discloses controlling

3  energy distribution based on the price of electricity with a system that stores electricity in a storage

4  bank during off-peak hours for later use when energy prices increase. (Ex B. ¶ 52.)

5       As explained in the Motion (at 13-15), Betak cannot establish a plausible claim for

6  corrected inventorship by merely explaining what was in the prior art. *Ethicon, Inc. v. U.S.*

7  *Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998) ("One who simply provides the inventor with

8  well-known principles or explains the state of the art without ever having 'a firm and definite idea'

9  of the claimed combination as a whole does not qualify as a joint inventor."); *Eastman v. Apple*

10  *Inc.*, 2018 WL 5982440, at *6 (N.D. Cal. Nov. 14, 2018) ("[A] joint inventor must . . . 'do more

11  than merely explain to the real inventors well-known concepts and/or the current state of the art.'"

12  (citation omitted)). The Court should therefore dismiss Betak's corrected inventorship claims for

13  this additional reason.

14       Betak never argues, in his Opposition, why his purported contributions are not disclosed in

15  Gadh or Johnson. (*See* Opp'n 13-15.) Those arguments are relegated to Betak's opposition to the

16  Corporate Defendants' request for judicial notice. (Opp'n to RJN 3-8.) For this reason, the

17  Corporate Defendants respond to those arguments in their reply to their request for judicial notice,

18  filed concurrently herewith. (Reply to RJN 2-3.)

19       B.    Gadh And Johnson Are Judicially Noticeable

20       Instead, in his Opposition, Betak frames his dispute in terms of this Court's power to take

21  judicial notice of Gadh and Johnson, relying exclusively on *CODA Development S.R.O. v.*

22  *Goodyear Tire & Rubber Co.*, 916 F.3d 1350 (Fed. Cir. 2019).

23       That reliance is misplaced. *CODA* turned on (1) the district court's improper reliance on

24  items outside the pleadings and (2) whether the plaintiff, Coda, sufficiently identified his

25  contributions. *Id.* at 1359-60. Coda filed a corrected inventorship action for patents directed to self-

26  inflating tires ("SIT"). *Id.* at 1353. Coda's complaint chronicled the defendant patentee's failed

27  efforts to make, and skepticism of, a commercially viable SIT, and further detailed how Coda

28  shared his "novel, proprietary, and confidential information concerning . . . SIT technology," which

7

1  was later claimed in the patents-at-issue. *Id.* at 1354. Coda's complaint additionally alleged that the

2  patentee, Goodyear, took unauthorized photos of a working SIT prototype, that one of Goodyear's

3  former employees spontaneously told the plaintiff that Goodyear copied his ideas, and that

4  Goodyear asked Coda for technical information at their joint meetings, among other things. *Id.*

5  Goodyear argued, and the district court agreed, that Coda failed to plead facts supporting

6  inventorship because the contribution allegations were vague and in the prior art. *Id.* at 1355. But

7  the Federal Circuit found Coda's claims plausible because of the "highly specific facts" alleged in

8  the complaint, including "Goodyear's prior failure, its eagerness to meet with Coda, its

9  unauthorized photography of Coda's functional prototype, the timing of its distancing itself from

10  Coda and its filing for the '586 patent, and a pointed accusation from one of its former employees."

11  *Id.* at 1359.

12        This case is different from *CODA*. First, Betak does not allege "highly specific facts"

13  regarding stealth photography, whistleblower communications, or otherwise that could raise

14  "reasonable inferences" that his ideas were stolen. *Id.* at 1359 (concluding that these "highly

15  specific facts" create a reasonable inference of a claim).

16        Second, and contrary to Betak's contention, this case is not like *CODA* because, here, there

17  is no ***reasonable*** dispute as to what Gadh and Johnson disclose. *Id* at 1355-56 (reaffirming that

18  matters are judicially noticeable if not "subject to reasonable dispute"). Betak mistakenly confuses

19  disputes the parties have regarding what the Complaint alleges are his contributions with disputes

20  regarding what Gadh and Johnson disclose. (*See* Opp'n 14-15.) The parties dispute the former, but

21  not the latter. And given Gadh's plain-language disclosure of Betak's alleged contributions (*see*

22  Mot. 13-15), Betak's argument that Gadh's contents are "hotly contested" is pretextal and

23  unreasonable. The Court should therefore consider Gadh and Johnson when deciding this motion,

24  as other courts have done with patent applications at the motion to dismiss stage. *See e.g.,*

25  *Anderson*, 570 F. App'x at 932 & n.3 (taking judicial notice of and considering a patent,

26  photographs of an accused product, and a published patent application, all central to a patentee's

27  infringement claim).

28

1    Finally, and crucially, Betak, unlike the *CODA* plaintiff, fails to allege facts establishing

2    that his alleged contributions are in the claims at issue. This case is therefore more akin to *Beco*

3    *Dairy* and *Ecojet*, where the plaintiffs in corrected inventorship actions alleged to have contributed

4    unclaimed ideas to a patented invention. *See Beco Dairy Automation, Inc. v. Glob. Tech Sys., Inc.*,

5    2015 WL 925588 (E.D. Cal. Mar. 3, 2015); *Ecojet*, 2017 WL 3485780. Specifically, the

6    purportedly omitted inventor in *Beco Dairy*—of patents covering electric milk meters—alleged to

7    have invented a three-ring milk meter, while the claims at issue required only two rings. *Beco*

8    *Dairy*, 2015 WL 925588, at *5. Given the differences between the plaintiff's alleged contribution

9    and the patent claims at issue, the court held that the complaint failed to plausibly establish the

10   plaintiff as a joint inventor. *See id.* ("Frankly, this Court cannot tell from the quoted passages how

11   Lininger's three-ring concept even applies to this patent."); *see also Ecojet*, 2017 WL 3485780, at

12   *5 (dismissing corrected-inventorship claim when the complaint was "threadbare," failing to

13   "identify what, if anything, [the putative inventor] actually contributed to the [patented] designs,

14   and [did] not allege that any of [his] contributions were actually claimed in the resulting patent");

15   *Eastman v. Apple Inc.*, 2018 WL 5982440, at *6 (N.D. Cal. Nov. 14, 2018) ("The Court cannot

16   reasonably infer that an alleged contribution that . . . is seemingly unrelated to the novel aspect of

17   the invention provides a basis for a [corrected inventorship] claim.").

18   For these reasons, and as explained in the Motion and Request for Judicial Notice briefing,

19   the Court should consider Gadh and Johnson in deciding whether Betak's alleged contributions are

20   plausibly significant because their scope and contents are not *reasonably* in dispute.

21   **III.    Betak's Promissory Fraud Claim Against EMW Fails For Not Meeting Rule 9(b)'s**
         **Heightened Standard And For Being Barred By The Economic Loss Rule**

22

23   The Complaint fails to allege, with particularity, facts that would plausibly establish EMW

24   engaged in a fraud against Betak.

25   In Betak's view, by alleging that Miftakhov was EMW's CEO, that Miftakhov engaged in

26   fraudulent conduct, and generally that Miftakhov acted on EMW's behalf, he satisfied Rule 9(b)'s

27   heightened pleading standard. (Opp'n 15-17.) That is not enough. "Rule 9(b) does not allow a

28   plaintiff to 'lump multiple defendants together,' but rather requires plaintiffs to distinguish their

9

1   allegations and inform each defendant separately of the allegations regarding any participation in

2   the fraud." *Kennedy v. World Sav. Bank, FSB*, 2015 WL 1814634, at *7 (N.D. Cal. Apr. 21, 2015)

3   (citing *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). And where fraud is

4   alleged against a company, the claim must be supported by, among other things, specific

5   allegations of one's "authority to speak" for the company. *Senah, Inc. v. Xi'an Forstar S&T Co.*,

6   2014 WL 6065895, at *3 (N.D. Cal. Nov. 12, 2014).

7        Here, Betak fails at each step. The only acts Betak specifically alleges EMW engaged in

8   against him—claiming the JuiceNet project as an EMW endeavor, giving Betak an EMW email

9   address, and naming Betak EMW's VP of Business Development and Community (Compl. ¶¶ 37-

10  38, 40; Opp'n 15-16)—did not involve any misrepresentations or fraudulent conduct. Instead—

11  according to Betak's own Complaint—any alleged misrepresentations originated from Miftakhov.

12  (Compl. ¶¶ 29-34.)

13       Moreover, Betak's bare-bones allegation that Miftakhov acted at all times in his capacity as

14  EMW's CEO (*see id.* ¶ 93) does not suffice. *See Senah*, 2014 WL 6065895, at *3 (dismissing fraud

15  claim where plaintiff failed to allege that a "Manager, International Department" had the "authority

16  to speak on behalf of the Defendant, as required when pleading the misrepresentation of a

17  corporate defendant"). Most importantly, Betak's impermissible lumping of Miftakhov and EMW

18  as one—and the allegation that Miftakhov was speaking on behalf of EMW in his capacity as its

19  CEO—is belied by Betak's specific allegations that Miftakhov disparaged EMW. (Compl. ¶ 31.) It

20  is also flat-out contradicted by Betak's specific allegation that Miftakhov told Betak that he would

21  be developing the JuiceBox/JuiceNet project through a separate, non-EMW company (EV Juice).

22  (*Id.*)

23       Betak also argues that the economic loss rule should not bar his promissory fraud claim

24  against EMW because he did not expressly allege a breach of contract (Opp'n 18), but cites no case

25  for the proposition that alleging breach of contract is a prerequisite to the economic loss rule's

26  application. And, in any event, by raising quasi-contract and quantum meruit theories, Betak does

27  seek recovery for a breach of contract—just an implied one. *Design Data Corp. v. Unigate Enter.*,

28

1  *Inc.*, 2013 WL 360542, at *5 (N.D. Cal. Jan. 29, 2013) ("California law recognizes two varieties of

2  implied contract: contracts are implied in law . . . [and] in fact.").

3       While it is true that some courts have held that a well-pleaded promissory fraud claim has

4  been recognized as an exception to the economic loss rule, Betak has not sufficiently pleaded

5  promissory fraud against EMW for the reasons provided herein and in the opening brief. *Oracle*

6  *USA, Inc. v. XL Global Servs., Inc.*, 2009 WL 2084154, at *7 (N.D. Cal. July 13, 2009) (applying

7  the economic loss rule to dismiss plaintiff's poorly pleaded promissory fraud claim when "[n]o

8  physical harm or exposure to liability for personal damages has resulted from [defendant]'s

9  withholding of payment"). The Corporate Defendants respectfully submit that the analysis set forth

10 in *Oracle* and other cases in the opening brief should be adopted by this Court. *See id.* at *7

11 ("Businesses should not have to worry that simple disputes about bills and contract performance

12 will routinely lead to the threat of punitive damages."). The Court should therefore dismiss Betak's

13 promissory fraud claim as barred by the economic loss rule.

14 **IV.   Betak's Breach Of Implied Contract Claims Against EMW Fail For Being Time-**
15 **      Barred And For Failing To Allege Specific Facts Against EMW**

16      Because Betak does not deny that his breach of implied contract claims (quasi-contract and

17 quantum meruit) are the same (Opp'n 20-21), the Court should dismiss one of them as redundant.

18 *See McBride v. Boughton*, 123 Cal. App. 4th 379, 388 n.6 (2004). As to whichever claim remains:

19 Contrary to Betak's contention that the statute of limitations began in October 2017 (when he

20 alleges Enel X acquired EMW (Compl. ¶ 69)), the statutory period began when Betak's

21 involvement with EMW ceased in November 2016. (*Id.* ¶¶ 67-68.) Given that Betak's limitations

22 clock started in November 2016, his filing of this lawsuit on May 9, 2019, is time-barred. *See* Cal.

23 Civ. Proc. Code § 339 (two year statute of limitations).

24      Betak cites to *Zakk v. Diesel*, 33 Cal. App. 5th 431, 455 (2019), for the proposition that the

25 statute of limitations for implied contract does not begin running until the time for an agreed-upon,

26 post-service payment arrives/lapses. (Opp'n 21.) But Betak does not allege having an

27 understanding with EMW regarding post-service payment. Indeed, Betak alleges only that he

28

**REPLY ISO EMW AND ENEL X NORTH AMERICA'S MOT. TO DISMISS        CASE NO.: 3:19-cv-02516-JSC**

1  began working on JuiceNet after Miftakhov promised him a 3% share of a *non-EMW* company, EV
2  Juice. (Compl. ¶ 33.)

3          For this same reason, Betak's contention that he alleged facts sufficient to sustain a
4  quantum meruit claim fails. (*See* Opp'n 21-22.) A quantum meruit claim requires, among other
5  things, allegations that the plaintiff rendered services at the defendant's request. *Summit Estate,*
6  *Inc. v. Cigna Healthcare of Cal., Inc.*, 2017 WL 4517111, at *11 (N.D. Cal. Oct. 10, 2017). Here,
7  Betak has not alleged facts establishing he worked at EMW's request. Rather, he alleges he
8  rendered services to EMW at Miftakhov's request, and for an ownership interest in a non-EMW
9  company (i.e., EV Juice), which contradicts Betak's general allegation that Miftakhov was acting
10 in his capacity as EMW's CEO when making the request. (Compl. ¶¶ 30-34.) Nothing Betak
11 alleges EMW did[8] supports a plausible conclusion that EMW specifically requested his services.
12 The Court should therefore dismiss Betak's remaining breach of implied contract claim for this
13 additional reason. *See Summit Estate*, 2017 WL 4517111, at *11 (dismissing quantum meruit claim
14 where "Plaintiffs have not alleged enough facts to plausibly suggest that Defendants *requested*
15 Plaintiff to render . . . services" (emphasis in original)).

16 **V.   Betak Does Not Allege Facts Plausibly Establishing A UCL Claim**

17        ***Unlawful prong***: Betak contends that federal patent law does not preempt his UCL claim
18 because "[t]here is no preemption where a claim under the patent laws involves bad faith." (Opp'n
19 23 n.7.) Betak, however, has not alleged bad faith. Indeed, *Globetrotter Software, Inc. v. Elan*
20 *Computer Group, Inc.*—a case Betak relies on to support his bad faith theory—holds that "to avoid
21 preemption, 'bad faith ***must be alleged*** and ultimately proven, even if bad faith is not otherwise an
22 element of the tort claim.'" 362 F.3d 1367, 1374 (Fed. Cir. 2004); *see also Zenith Elecs. Corp. v.*
23 *Exzec, Inc.*, 182 F.3d 1340, 1344 (Fed. Cir. 1999) (noting that plaintiff alleged in its complaint the
24 "bad faith conduct of . . . [defendant]").

25        Moreover, even if Betak actually alleged bad faith (which he did not), the two cases Betak
26 cites are inapposite because both involved "tortious interference with prospective economic

---

27  [8]     Claiming the JuiceNet endeavor, naming Betak as VP of Business Development and
28 Community, giving Betak an EMW email, hiring others to work on JuiceNet, and later asserting
   Betak was a contractor who had assigned his IP rights to EMW. (Opp'n 22.)

1  advantage," which, in both cases, related to pre-suit communications in advance of patent

2  infringement actions. *Zenith*, 182 F.3d at 1355; *Globetrotter*, 362 F.3d at 1374-75. In contrast,

3  here, Betak's UCL claims do not stem from pre-suit communications in advance of patent

4  infringement actions. *Zenith* and *Globetrotter* are therefore inapplicable here, and the Court should

5  instead dismiss Betak's unlawful-UCL claim as preempted by federal patent law. *See James v. J2*

6  *Cloud Servs. Inc.*, 2018 WL 6092461, at *6 (C.D. Cal. Nov. 19, 2018) (preempting California

7  unfair competition claim "because it is entirely based on plaintiff's assertion of sole inventorship of

8  the [patent at issue]").

9       Additionally, for the above-stated reasons and those stated in the Motion (*see* Mot. 15-19),

10  Betak cannot rely on common law claims to support his unlawful-UCL claim, and he has failed to

11  state a plausible claim for promissory fraud (or any common law tort) against EMW; thus, for these

12  additional reasons, "he [] cannot state a UCL claim [under the unlawful prong] either." *Suarez v.*

13  *Bank of Am. Corp.*, 2018 WL 2431473, at *31 (N.D. Cal. May 30, 2018).

14       ***Unfair prong***: Betak contends incorrectly that "[t]he Complaint alleges . . . EMW, and Enel

15  X have engaged in business acts and practices that are immoral, unethical, oppressive,

16  unscrupulous, and substantially injurious to Mr. Betak" (Opp'n 23), but none of those words

17  appears in the Complaint. Furthermore, Betak repeats his erroneous position that the Complaint

18  alleges EMW (through Miftakhov) fraudulently "promise[d] that Betak would share in the

19  proceeds resulting from JuiceBox/JuiceNet." (*Id.*) But the Complaint contradicts that position,

20  alleging instead that Miftakhov, while disparaging EMW, promised Betak an ownership interest in

21  a non-EMW company—EV Juice. (Compl. ¶¶ 30-34.)

22       Moreover, Betak asks the Court to ignore *Cel-Tech Communications, Inc. v. L.A. Cellular*

23  *Tel. Co.*, 20 Cal. 4th 163, 187 (1999) (defining "unfair" as "conduct that threatens an incipient

24  violation of an antitrust law, or violates the policy or spirit of one of those laws"), arguing that it

25  applies only to direct business competitors. (Opp'n 24.) Betak asks the Court instead to apply

26  *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861 (1999), which

27  instructs courts to "weigh the utility of the defendant's conduct against the gravity of the harm to

28  the alleged victim" in determining whether a business practice is unfair. *Id.* at 886; (Opp'n 23-24).

1  But *South Bay* is inapposite because Betak is not a consumer. *Lozano v. AT&T Wireless Servs. Inc.*,

2  504 F.3d 718, 735 (2007) (holding that *South Bay* balancing test applies only to "harm to the

3  consumer").

4        Since Betak is not a consumer, as is now disclaiming liability under *Cel-Tech*'s competitor

5  test (Opp'n 24), he has no claim under the UCL's "unfair" prong. *See Almasi v. Equilon Enters.,*

6  *LLC*, 2012 WL 3945528, at *9 (N.D. Cal. Sept. 10, 2012) ("Plaintiffs have failed to provide any

7  support for their argument that they are able to bring a UCL claim for unfair practices despite not

8  being consumers and not being competitors."). The UCL is not "an all-purpose substitute for a tort

9  or contract action." *Louis v. Nailtiques Cosmetic Corp.*, 423 F. App'x 711, 714 (9th Cir. 2011).

10  Thus, the Court should either apply *Cel-Tech* and find that Betak has failed to allege facts

11  establishing a plausible UCL claim under the unfair prong (because the Complaint contains no

12  allegations of antitrust violations) or find that Betak cannot allege an "unfair" prong claim because

13  he is neither a customer or competitor. *Copart Inc. v. Sparta Consulting, Inc.*, 2015 WL 3622618,

14  at *10 (E.D. Cal. June 9, 2015) ("Sparta does not cite a single case where the UCL has been

15  applied that does not rely either on consumer or competitive harm.").

16        ***Fraudulent prong***: For the above-stated reasons and those stated in the Motion, Betak has

17  failed to state a plausible claim for promissory fraud against EMW; thus, Betak's UCL claim under

18  the fraud prong fails. *See Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 821 (N.D. Cal. 2014)

19  ("Because Plaintiff has not pled with particularity the circumstances surrounding Apple's

20  fraudulent behavior, she has failed to meet the 9(b) pleading standards for her claims sounding in

21  fraud and the Court will dismiss the . . . UCL counts against Apple.").

22  **VI.   The Court Should Dismiss Betak's Constructive Trust Claim Because It Is Not A**
23  **Cause Of Action**

24        Betak does not deny that a constructive trust is not a cause of action, and is instead a

25  remedy. (Opp'n 24.) This Court therefore should dismiss the claim. *See Kim v. Westmoore*

26  *Partners, Inc.*, 201 Cal. App. 4th 267, 277 n.4 (2011) (refusing to consider a constructive trust a

27  "cause[] of action" on default judgment because constructive trust is an equitable remedy, not a

28  cause of action).

**VII.    Betak's Accounting Claim Fails Because The Complaint Does Not Allege A Sufficient Relationship Or An Unascertainable Value**

Betak does not dispute the law that an accounting claim requires both (i) a relationship between the parties and (ii) a balance owed that cannot be ascertained without an accounting. (Opp'n 25); *Shkolnikov v. JPMorgan Chase Bank*, 2012 WL 6553988, at *23 (N.D. Cal. Dec. 14, 2012). Here, the Complaint fails to allege a relationship between EMW and Betak justifying an accounting, or an unascertainable balance. (Mot. 24-25.) Betak's contention that the "value of the transferred assets and property are unknown [and] cannot be ascertained without an accounting" (Compl. ¶ 117), is contradicted by the specific allegations in the Complaint that any purported amount due can be ascertained reasonably, including Betak's alleged equity in EMW and Enel X's alleged purchase price for it. (Compl. ¶¶ 33, 69.) Therefore, the Court should dismiss Betak's accounting claim. *See Shkolnikov*, 2012 WL 6553988, at *23 ("[A]n action for accounting is not available where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by calculation.").

Additionally, for the reasons described above and in the Motion, the accounting claim should be dismissed because it is a derivative claim that itself relies on poorly pleaded claims. *See Janis v. Cal. State Lottery Comm'n*, 68 Cal. App. 4th 824, 833 (1998) (dismissing accounting claim where it was the sole remaining claim because "[a] right to an accounting is derivative; it must be based on other claims"). If those poorly pleaded claims fall, so should Betak's accounting claim.

## CONCLUSION

For the foregoing reasons, the Court should grant this motion in full.

Date: August 16, 2019                    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: */s/   John M. Neukom*
JOHN M. NEUKOM
Attorneys for Defendants,
ENEL X NORTH AMERICA and
ELECTRIC MOTOR WERKS, INC.